UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RANKING SMITH,

                                        Petitioner,

v.                                                              9:21-cv-1219
                                                                (GLS/TWD)


D. CHRISTENSEN, Warden,

                                        Respondent.
_____

APPEARANCES:                            OF COUNSEL:

RANKING SMITH
*Petitioner, pro se*
14744-056
Ray Brook Federal Correctional Institution
P.O. Box 900
Ray Brook, NY 12977

HON. CARLA B. FREEDMAN              RANSOM P. REYNOLDS, III, ESQ.
United States Attorney for the
Northern District of New York
Attorney for Respondent
100 S Clinton St
Suite 9000
Syracuse, NY 13261

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**REPORT-RECOMMENDATION AND ORDER**

I.      **INTRODUCTION**

        *Pro se* petitioner Ranking Smith ("Petitioner") filed a petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2241.  *See generally*, Dkt. No. 1.  For the reasons set forth

below, the Court recommends the petition be denied and dismissed.

## II.     BACKGROUND

On May 4, 1992, Petitioner was arrested by New York State authorities in Kings County, New York, on charges of assault and resisting arrest under New York Law.  *See* Dkt. No. 6-1 at 1.[1]  Petitioner was sentenced to a term of three to six years imprisonment for his assault conviction, and a concurrent term of sixth months for resisting arrest, by Kings County Criminal Court on March 30, 1993.  *Id*. at 2.[2]

While in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), Petitioner was indicted on federal charges in the Eastern District of North Carolina.  *Id*.; *see also*, Dkt. No. 6-2 at 6-11.  On September 7, 1993, Petitioner was charged with: conspiracy to possess with intent to distribute cocaine base (count one); continuing criminal enterprise-murder (count three); use of a firearm during and in relation to a drug trafficking crime (count four); possession of a firearm in relation to a crime of violence (count five); possession with intent to distribute cocaine base (count twelve); and distribution of cocaine base (counts seventeen through twenty).  Dkt. No. 6-2 at 6-7.  On October 22, 1993, Petitioner was transferred to federal authorities pursuant to a writ of habeas corpus ad prosequendum issued by the United States District Court for the Eastern District of North Carolina.  Dkt. No. 6-1 at 2; *see also* Dkt. No. 6-2 at 7.

---

[1] Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[2] Exhibits provided by Respondent identify Petitioner as "Darrell Jackson," *see* Dkt. No. 6-2 at 2, which Respondent contends, *see* Dkt. No. 6-1 at 2, and Petitioner does not dispute, *see generally*, Dkt. No. 8, is Petitioner's true name.

Following jury trial in in the Eastern District of North Carolina, Petitioner was convicted of the aforementioned federal charges.  Dkt. No. 6-2 at 9.  On May 23, 1994, he was sentenced to: life on counts one and three, to run concurrently with each other; 40 years' imprisonment on counts 17 through 20, to run concurrently with the sentence imposed on counts one and three; five years on count four, to run consecutively to the sentences previously imposed; and 20 years on count five, to run consecutively to the aforementioned sentences.  *Id*. at 9.  Petitioner was returned to DOCCS custody to continue serving his New York state sentence on October 25, 1994.  Dkt. No. 6-1 at 2.  On September 26, 1995, DOCCS released Petitioner into the primary jurisdiction of federal authorities to serve the sentences imposed by the District Court for the Eastern District of North Carolina.  *Id*.; Dkt. No. 6-2 at 2.

On December 7, 2020, Petitioner reappeared before the sentencing court on a motion for a reduction in sentence pursuant to the First Step Act of 2018.  *See* Dkt. No. 6-2 at 25-32.  The District Court for the Eastern District of North Carolina granted Petitioner's motion and imposed a reduced sentence as follows: "240 months' imprisonment on count one; 300 months' imprisonment on count three; 240 months' imprisonment on counts seventeen though twenty, all concurrent; sixty months' imprisonment on count four, consecutive; and sixty months' imprisonment on count five, consecutive, for an aggregate sentence of 420 months' imprisonment."  *Id*. at 32.

Petitioner is currently incarcerated at FCI Ray Brook.  Dkt. No. 1 at 1.  He filed a Request for Administrative Remedy wherein he claimed he had "been in federal custody since October 22, 1993, and as such, should be granted prior custody credit up until the time [Petitioner's] federal sentence was imposed."  *Id*. at 6.  By response dated February 12, 2021, Petitioner's request was denied.  *Id*.  In denying the request, Warden D. Christensen relied on 18

U.S.C. § 3585, which governs the computation of federal sentences, as well as Federal Bureau of Prisons ("BOP") Program Statement 5880.28.  *See id*.

## III.   PETITION

Petitioner commenced the instant action on November 10, 2020, challenging FCI Ray Brook's "Failure to provide petitioner with jail time credit towards the federal sentence he is serving."  Dkt. No. 1 at 2.  Petitioner requests this Court "declare that the statutes [18 U.S.C. § 3585 and BOP Program Statement 5880.28] as applied to petitioner violates the seperation of power doctrine established by the U.S. Constitution" and "order the respondent to give credit to petitioner for the time served in order to comply with the intention of the original sentencing Judge when he committed petitioner to the custody of the F.B.O.P."  *Id*. at 5.  Respondent contends the BOP properly calculated Petitioner's sentence, as his "federal sentence actually began on September 26, 1995, the date upon which he completed his [New York] state obligation and was released to the U.S. Marshals Service to begin service of his federal term." Dkt. No. 6 at 5.  In his Traverse, Petitioner avers "if the district court intended for petitioner[] to remain in federal custody serving his federal sentence . . ." then "[a]ny application of the [BOP] statutes and regulation which disregards such order will violate the separation of powers doctrine establish by the U.S. constitution."  Dkt. No. 8 at 1.

## IV.   DISCUSSION

Habeas corpus relief is available where a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "A § 2241 petition is generally the appropriate vehicle to raise claims arising from a prison official's computation of a prisoner's sentence."  *Clapper v. Langford*, 186 F. Supp. 3d 235, 238 (N.D.N.Y. 2016) (citing *Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003)).  Therefore, §

2241 is the proper vehicle for Petitioner's claims.  *See*, *e.g.*, *Lugo v. Hudson*, No. 9:13-CV-0753 (GTS), 2014 WL 11350815, at *4 (N.D.N.Y. June 16, 2014) (petitioner's claims "challenging the BOP's calculation of his federal sentence . . . [were] properly brought pursuant to section 2241."), *aff'd*, 785 F.3d 852 (2d Cir. 2015).

Where, as here, a petitioner challenges the BOP's computation of his federal sentence, the "threshold issue in determining the commencement date of a Federal sentence is whether the defendant was in primary Federal or primary non-Federal custody . . . at the time the Federal sentence was imposed.  If the defendant was in primary Federal custody, the Federal sentence will commence upon imposition." *Dutton v. U.S. Att'y Gen*., 713 F. Supp. 2d 194, 199 (W.D.N.Y. 2010) (citing 18 U.S.C. § 3585(a)); *see also*, *e.g.*, *Lugo*, 2014 WL 11350815, at *4. "When a state prisoner is transferred into federal custody pursuant to . . . [a writ of habeas corpus ad prosequendum], the state retains primary custody over him or her because the prisoner is 'on loan' to federal authorities." *Clapper*, 186 F. Supp. 3d at 239 (citation omitted); *see also United States v. Fermin*, 252 F.3d 102, 108 n. 10 (2d Cir. 2001) (explaining, "a defendant held at a federal detention facility is not 'in custody' for the purposes of § 3585(a) when he is produced through a writ of habeas corpus ad prosequendum.").  Here, Petitioner was in federal custody pursuant to a writ of habeas corpus ad prosequendum issued by the United States District Court for the Eastern District of North Carolina at the time his federal sentence was imposed in May of 1994, therefore, New York state retained primary custody over him, and his federal sentence did not commence at the time of its imposition.  *See*, *e.g.*, *Dutton*, 713 F. Supp. 2d at 201 (W.D.N.Y. 2010) ("[A]fter Petitioner went into primary state custody, he was 'borrowed' by Federal authorities pursuant to . . . Federal writs of habeas corpus ad prosequendum . . . . However, the

Federal warrant, arrest, prosecution, and sentencing did not terminate the non-Federal primary custody over [the petitioner].").

Where a "defendant was in primary State or other non-Federal custody at the time the Federal sentence was imposed, the Bureau of Prisons must determine whether the Federal sentencing court expressly indicated its intent as to whether the federal sentence run[s] concurrently with, or consecutively to, the non-Federal sentence." *Id*. at 199 (citing 18 U.S.C. § 3584(a)); *see also*, *e.g.*, *Thomas v. Warden FCI Ray Brook*, No. 9:18-CV-00430 (MAD/TWD), 2021 WL 4086139, at *4 (N.D.N.Y. June 28, 2021) ("When a defendant was in primary state custody at the time his or her federal sentence was imposed, the BOP must determine whether the district court intended the federal sentence to run concurrently with, or consecutively to, the state sentence.") (citations omitted), *report and recommendation adopted*, 2021 WL 4084306 (N.D.N.Y. Sept. 8, 2021). To that end, while the sentencing court expressed "intent . . . for [Petitioner] to remain in federal custody in order to begin serving [his] federal sentence" at the time of his original sentencing, "the court did not specify the manner in which [Petitioner's] federal sentence would run (either concurrently or consecutively) to [Petitioner's previously imposed] state sentence." Dkt. No. 1 at 6.

"If the district court's judgment is silent on th[e] issue," of whether a defendant's sentence should run currently with, or consecutively to, a state sentence, "the court's silence is construed as an intent to impose a consecutive sentence, and the federal sentence commences only when primary state custody over the defendant is relinquished." *Clapper*, 186 F. Supp. 3d at 238 (citation omitted); *see also*, *e.g.*, *Thomas*, 2021 WL 4086139, at *4 ("If the district court's judgment is silent on this issue, the court's silence is construed as an intent to impose a consecutive sentence, and the federal sentence commences only when primary state custody over

the defendant is relinquished.") (citations omitted); *Cruz v. Bureau of Prisons*, No. 1:10-CV-5460, 2013 WL 12177171, at *10 (S.D.N.Y. Mar. 22, 2013) ("[T]he sentencing court's silence, if anything, suggested that the court's intention was for Petitioner's sentences to run consecutively . . . ."), *report and recommendation adopted*, 2014 WL 12648510 (S.D.N.Y. Mar. 24, 2014), *aff'd sub nom.*, *Cruz v. Walsh*, 633 F. App'x at 794 (2d Cir. 2015). Accordingly, Petitioner's federal sentence commenced on September 26, 1995, when DOCCS released him into the primary jurisdiction of federal authorities. *See* Dkt. No. 6-1 at 2.

Moreover, "[t]ime that has been credited to a state sentence may not also be credited toward a federal sentence because § 3585(b) prohibits defendants from receiving 'double credit for [their] detention time.'" *Clapper*, 186 F. Supp. 3d at 239 (quoting *United States v. Wilson*, 503 U.S. 329, 337 (1992)) (collecting cases); *see also*, *e.g.*, *Thomas*, 2021 WL 4086139, at *5 ("[U]nder 18 U.S.C. § 3585(b), the BOP cannot grant an inmate credit toward the federal sentence for the same period of time in custody that has also been credited toward a state sentence.") (citations omitted). Therefore, as Respondent has correctly identified, Petitioner was not entitled to credit for time he spent in custody prior to his release from DOCCS to federal authorities.

Insofar as Petitioner contests the BOP's authority to make determinations as to when a federal sentence commences and whether a defendant is entitled to credit for time spent in detention prior to that date, any such argument is unsupported. It is well established that "[t]he Bureau of Prisons, and not the courts, determines when a defendant's sentence starts and whether the defendant should receive credit for any prior time spent in custody." *United States v. Montez-Gaviria*, 163 F.3d 697, 700-01 (2d Cir. 1998) (citing *United States v. Labeille-Soto*, 163 F.3d 93, 98 (2d Cir. 1998); *Werber v. United States*, 149 F.3d 172, 179 (2d Cir. 1998); *United*

*States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997); 18 U.S.C. § 3585); *see also Thomas*, 2021 WL 4086139, at *4 ("Although a prisoner may later seek judicial review, it is the responsibility of the BOP, and not the courts, to determine the commencement of a federal sentence and calculate any credit toward that sentence for time already served.").

Petitioner contends determinations as to when a "sentence commenced and was completed" are "core judicial function[s,]" therefore, the BOP making those decisions "constitutes a violation of the seperation of powers established by the U.S. Constitution." Dkt. No. 1 at 4. This argument is unpersuasive and has been explicitly rejected by courts in this circuit. *See Cruz*, 2013 WL 12177171, at *9 (rejecting the petitioner's argument "that, to the extent the BOP, and not the sentencing court, made the concurrency decision in his case, the BOP's decision violated the constitutional requirement of separation of powers."); *Cruz*, 633 F. App'x 795 (concluding the district court "correctly ruled that [the petitioner]'s separation of powers and due process claims were foreclosed by our precedent recognizing that, when a federal sentencing court is silent as to whether its sentence should be served consecutively to or concurrently with an anticipated state sentence, the BOP is authorized to make that determination." ) (citing *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 76 (2d Cir. 2005); *McCarthy v. Doe*, 146 F.3d 118, 122-23 (2d Cir. 1998)); *see also*, *e.g.*, *Dutton*, 713 F. Supp. 2d at 199 n.3 (explaining, "[b]y enacting 18 U.S.C. § 3585, Congress vested the Attorney General authority to make sentencing credit determinations . . . . The Attorney General, under 28 C.F.R. § 0.96, delegated this authority to the Bureau of Prisons.") (citing *Wilson*, 503 U.S. at 333; *Jake v. Herschberger*, 173 F.3d 1059, 1066 (7th Cir. 1999); *United States v. Brann*, 990 F.2d 98, 103-104 (3d Cir. 1993)).

Finally, Petitioner submitted in his fillings a copy of an opinion from the Eastern District of Virginia.  *See* Dkt. No. 1 at 7-18.  In *Zakiya v. Reno*, the District Court granted the petitioner's request for a writ of habeas corpus under § 2241, finding 18 U.S.C. § 3624(e) did not permit the BOP to hold the petitioner "past the period of incarceration imposed by the sentencing court . . . ."  52 F. Supp. 2d 629, 638 (E.D. Va. 1999).  Petitioner's reliance on *Zakiya* here is misplaced, however, as the instant case is distinguishable.  As explained above, Petitioner's federal sentence commenced on September 26, 1995, therefore, unlike the petitioner in *Zakiya*, he has not "served his entire sentence . . . ."  *See id*. at 637.

In sum, Petitioner's challenge to the BOP's authority to calculate his federal sentence is meritless.  Accordingly, the undersigned recommends the petition be denied and dismissed.

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that the petition, Dkt. No. 1, be **DENIED and DISMISSED** in its entirety; and it is further

**RECOMMENDED** that no Certificate of Appealability ("COA") shall issue because reasonable jurists would not find it debatable that Petitioner has failed to offer a substantial showing that he was denied a constitutional right. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

**ORDERED** that the Clerk shall serve a copy of this Report-Recommendation and Order on Petitioner, along with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**ORDERED** that the Clerk serve a copy of the Report-Recommendation on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated:  October 21, 2024
          Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

Lugo v. Hudson, Not Reported in Fed. Supp. (2014)

2014 WL 11350815

2014 WL 11350815
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Daniel LUGO, Petitioner,

v.

D. HUDSON, Respondent.

9:13-CV-0753 (GTS)
|
Signed 06/16/2014

**Attorneys and Law Firms**

DANIEL LUGO, 67190-053, FCI Ray Brook, P.O. Box 900, Ray Brook, NY 12977, Petitioner, pro se.

OFFICE OF THE UNITED STATES ATTORNEY, P.O. Box 7198, 100 S. Clinton Street, OF COUNSEL: CHARLES E. ROBERTS, AUSA, Syracuse, New York 13261-7198.

### *DECISION AND ORDER*

GLENN T. SUDDABY, United States District Judge

## I. INTRODUCTION

 **\*1**  Petitioner Daniel Lugo seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1, Petition ("Pet."); Dkt. No. 1–1, Memorandum of Law in Support of Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Mem."). On October 29, 2002, petitioner was sentenced in the United States District Court for the Eastern District of New York to serve an aggregate term of ten years in prison and five years supervised release following his conviction for conspiracy to commit murder in violation of 18 U.S.C. § 1959(a)(5). Pet. at 1; see *United States v. Lugo*, No. 1:01–CR–0922, Dkt. No. 218, Judgment in a Criminal Case. Petitioner does not contest his conviction. Rather, he asserts that the Federal Bureau of Prisons ("BOP") incorrectly calculated his sentence. See Pet.; Dkt. No. 7, Supplement to Petition ("Supp."). [1] Respondent opposes the petition. Dkt. No. 10, Response to Petition for Writ of Habeas Corpus ("Response"); Dkt. No. 10–1, Unpublished Cases; Dkt. No. 10–2, Declaration of Bryan Erickson ("Erickson Dec."); Dkt. No. 10–3, Exhibits to Erickson Dec. ("Exhibits"). On November 18, 2013, petitioner filed a reply. Dkt. No. 11, Reply to Response to Petition for Writ of Habeas Corpus ("Reply"). For the reasons that follow, the petition is denied and dismissed.

[1]   For the sake of clarity, the cited page numbers for the petition, the supplement and the records attached to each of those documents refer to the electronically generated numbers at the top right-hand corner of each page.

## II. BACKGROUND

The following factual summary is derived from the petition, respondent's answer, and the records provided by both parties. On February 4, 2000, petitioner was sentenced in New York County to serve an aggregate term of six to twelve years in a New York State correctional facility for his conviction of criminal possession of a controlled substance and conspiracy charged in two separate state indictments. Dkt. No. 10–2, Erickson Dec., ¶¶ 5–6; Dkt. No. 10–3, Exhibit B, Sentence and Commitment Orders, New York County Supreme Court. On March 8, 2000, petitioner began serving his state sentence. He received 98 days of prior custody credit toward his state sentence December 1, 1999 to March 7, 2000. Dkt. No. 10–2, Erickson Dec. at ¶ 7; Dkt. No. 10–3, Exhibit A, Sentence Monitoring, Independent Sentence Computation.

Case 9:21-cv-01219-DNH-TWD    Document 11    Filed 10/21/24    Page 12 of 45

Lugo v. Hudson, Not Reported in Fed. Supp. (2014)

2014 WL 11350815

On October 18, 2001, an Assistant United States Attorney applied for a federal writ of habeas corpus ad prosequendum to secure petitioner's appearance in the Eastern District of New York for arraignment on Indictment Number 1:01–CR–0922, charging him with conspiracy to commit murder. Dkt. No. 10–2, Erickson Dec. at ¶ 8; Dkt. No. 10–3, Exhibit C, Application for Writ of Habeas Corpus, Oct. 4, 2001. The writ was issued on October 4, 2001, and it specified that petitioner was to be produced for arraignment and thereafter maintained "within the jurisdiction of" the issuing federal court "pending the satisfaction of this writ or the future orders of the Court." Dkt. No. 10–3, Exhibit C at 1.

**\*2**  On October 29, 2002, petitioner was sentenced in the Eastern District of New York to serve ten years in prison and five years supervised release upon his conviction for conspiracy to commit murder. Dkt. No. 10–3, Exhibit D, Judgment in a Criminal Case. The district court ordered the federal sentence to run consecutively to petitioner's New York state sentence. *Id.* at 2. On November 14, 2002, the United States Marshals Service in the Eastern District of New York returned petitioner to the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), and lodged the federal judgment and commitment order as a detainer. Dkt. No. 10–2, Erickson Dec. at ¶ 10; Dkt. No. 10–3, Exhibit E, Individual Custody and Detention Report, USM 129, at 2, Status History.

On October 31, 2008, petitioner was released from DOCCS custody into the custody of the United States Marshals Service in this district to begin serving his federal sentence. Dkt. No. 10–3, Exhibit E, Individual Custody and Detention Report, USM 129. The BOP calculated petitioner's sentence and determined that it commenced on October 31, 2008, with a projected release date of September 3, 2017. Dkt. No. 10–2, Erickson Dec. at ¶ 4; Dkt. No. 10–3, Exhibit G, Sentencing Computation Monitoring Data.

On January 7, 2013, petitioner filed an Informal Resolution request at FCI Ray Brook in which he argued that when his federal sentence was imposed on October 29, 2002, he was ordered committed to the custody of the BOP but instead, the United States Marshals Service took him to DOCCS. Petitioner argued that, as a result, his federal sentence expired and he was entitled to release. Dkt. No. 1 at 24, Informal Resolution. On January 14, 2013, his request for relief was denied because the facility determined petitioner "cannot get credit that was credited to another sentence," and "[t]ime spent borrowed on a writ from state custody is not credit." Dkt. No. 1 at 25, Handwritten Answer.

On January 24, 2013, petitioner filed a Request for Administrative Remedy in which he raised the same arguments. Dkt. No. 1 at 22, Request for Administrative Remedy. In a response dated February 15, 2013, Warden D. Hudson denied petitioner's request. Dkt. No. 1 at 23, Part B–Response, Feb. 15, 2013. He explained that the BOP was prohibited from commencing petitioner's federal sentence on October 29, 2002, the date it was imposed, because the district court ordered the sentence to run "consecutive with the state court sentence" imposed on February 4, 2000. *Id.* Warden Hudson further explained that on October 18, 2001, petitioner was temporarily removed from state custody "on a federal writ for [his] current 10 year term of imprisonment," that on November 14, 2002, he was returned to state custody and the "federal sentence was lodged as a detainer with N.Y. state authorities," and that on October 31, 2008, petitioner was paroled on the state sentence, and his "consecutive federal sentence commenced" on that date. *Id.* Warden Hudson also explained that under BOP Program Statement 5880.28:

> time spent in custody under a writ of habeas corpus from non-federal custody will not in and of itself be considered for the purpose of crediting presentence time. The primary reason for 'writ' custody is not the federal charge. The federal court merely 'borrows' the prisoner under the provisions of the writ for secondary custody.

*Id.* (quoting Program Statement 5880.28). Warden Hudson concluded that "[s]ince the period of time [petitioner was] requesting was credited to another sentence, it cannot be applied" to petitioner's federal sentence. Id. (referencing 18 U.S.C. § 3585(b) and Program Statement 5880.28).

On February 23, 2013, petitioner filed a Regional Administrative Remedy Appeal. Dkt. No. 1 at 20, Regional Administrative Remedy Appeal. Petitioner argued that the federal district court ordered that he be committed to the custody of the BOP for ten years to run consecutive with his state sentence, and remanded him to the custody of the United States Marshals Service. *Id.* He claimed that because the Marshals Service transported him to DOCCS, they did not obey the federal court's order. *Id.* According to petitioner, after he completed his federal sentence, he was then supposed to be returned to DOCCS to continue serving his state sentence. *Id.* He argued that his federal sentence was "still running" while he was in DOCCS custody, and had expired. *Id.*

**\*3** On March 28, 2013, petitioner's appeal was denied. Dkt. No. 1 at 21, Part B–Response. Regional Director J.L. Norwood explained that petitioner was in primary state custody when he was produced in federal court "via a federal Writ of Habeas Corpus ad Prosequendum." *Id.* Norwood explained that the federal court ordered his sentence to run consecutively to petitioner's state sentence; New York had primary custody over petitioner until he completed his state sentence on October 31, 2008; petitioner's federal sentence began upon his release from state custody; and petitioner's "production for federal prosecution via a federal writ did not shift primary jurisdiction from the state." *Id.* Finally, Norwood explained that the period of time for which petitioner sought credit against his federal sentence was credited to his state sentence, and could not be awarded twice. *Id.* (citing 18 U.S.C. § 3585(b)).

On April 12, 2013, petitioner filed a Central Office Administrative Remedy Appeal. Dkt. No. 1 at 18, Central Office Administrative. Remedy Appeal. He raised the same arguments he presented in his regional appeal, but also argued that because the district court did not stay his federal sentence, it began to run when the district court committed him to the custody of the Marshals Service and had therefore expired. *Id.* On May 22, 2013, his appeal was denied. Dkt. No. 1 at 19, Administrative Remedy No. 721266–A1, Part B–Response.

On May 8, 2013, petitioner filed another Informal Resolution request in which he asserted that there was never a writ of habeas corpus ad prosequendum issued to take him into federal custody on October 18, 2001. He argued that his federal sentence therefore began to run on October 18, 2001, and was expired. Dkt. No. 1 at 14, Informal Resolution. Petitioner did not receive a response, and on May 28, 2013, he filed a Request for Administrative Remedy repeating this argument. Dkt. No. 1 at 11, Request for Administrative Remedy; Dkt. No. 7–1 at 6, Request for Administrative Remedy. He also claimed that he was in exclusive federal custody from October 18, 2001 to October 29, 2002, and that counting forward from either date, his federal sentence was satisfied. Dkt. No. 1 at 11; Dkt. No. 7–1 at 6.

On June 18, 2013, petitioner's request for an administrative remedy was denied. Dkt. No. 7–1 at 7, Request for Administrative Remedy, Part B–Response. Warden D. Hudson explained that the issues raised in petitioner's papers were resolved in previous administrative remedy filings, and petitioner presented "no new information that would warrant further review." *Id.* On June 25, 2013, petitioner filed a Regional Administrative Remedy Appeal. Dkt. No. 7–1 at 8, Regional Administrative Remedy Appeal. On July 31, 2013, his appeal was denied because petitioner's claims were previously addressed, and his sentence was "computed correctly [.]" Dkt. No. 7–1 at 10, Part B–Response.

Petitioner filed a Central Office Administrative Remedy Appeal on August 2, 2013. Dkt. No. 7–1 at 11, Central Office Administrative Remedy Appeal. On August 21, 2013, petitioner's appeal was rejected and returned to him because he failed to provide a copy of his Regional Administrative Remedy Appeal form or a copy of the response from the Regional Director. Dkt. No. 7–1 at 16, Rejection Notice—Administrative Remedy. Petitioner was given fifteen (15) days to resubmit his appeal. *Id.* On August 20, 2013, petitioner submitted another Central Office Administrative Remedy Appeal. Dkt. No. 7–1 at 12, Central Office Administrative Remedy Appeal. The outcome of that appeal is unclear.

Respondent does not argue that petitioner's administrative remedies have not been properly exhausted, and the records show that petitioner raised his claims in several administrative appeals. The court finds that petitioner has exhausted his claims and will therefore address them on the merits.

## III. DISCUSSION

Lugo v. Hudson, Not Reported in Fed. Supp. (2014)
Case 9:21-cv-01219-DNH-TWD    Document 11    Filed 10/21/24    Page 14 of 45
2014 WL 11350815

### A. Petitioner's claims

**\*4**  In his petition, memorandum of law, and reply, petitioner claims that: (1) because the federal district court did not stay his ten-year sentence, it commenced on the day it was imposed, and the United States Marshals Service violated the commitment order by returning him to state custody rather than committing him to the custody of the BOP; and (2) there was no valid writ of habeas corpus ad prosequendum issued, and he was therefore in exclusive federal custody beginning October 18, 2001, when he was transported to the district court. Pet.; Mem. at 2–11; Reply at 2–4. Petitioner argues that his federal sentence has therefore expired, and he is entitled to release. Pet.; Mem. at 11.

### B. Relevant Statute and Controlling Precedent

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A section 2241 petition is generally the appropriate vehicle to raise claims arising from a prison official's computation of a prisoner's sentence. *Poindexter v. Nash,* 333 F.3d 372, 377 (2d Cir.2003) (explaining that section 2241 is the proper way for a federal inmate to challenge the BOP's calculation of credit to be given for other periods of detention). Petitioner is challenging the BOP's calculation of his federal sentence, and his claims are properly brought pursuant to section 2241. Petitioner is not, however, entitled to relief.

The United States Attorney General has delegated the authority to calculate federal sentences to the Bureau of Prisons. *United States v. Wilson,* 503 U.S. 329, 331–34 (1992); *United States v. Labeille–Soto,* 163 F.3d 93, 98 (2d Cir.1998). Pursuant to 18 U.S.C. § 3585(a), a federal sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); *Labeille–Soto,* 163 F.3d at 98. If a defendant was in primary federal custody at the time of sentencing, the federal sentence commences upon imposition. 18 U.S.C. § 3585(a); *Dutton v. U.S. Atty. Gen.,* 713 F.Supp.2d 194, 199 (W.D.N.Y.2010).

When a defendant is borrowed from the primary custody of a state by writ of habeas corpus ad prosequendum, however, the state retains primary jurisdiction over the prisoner. *See United States v. Lockenwitz,* 376 Fed.Appx. 147, 150 (2d Cir.2010) ("[A] defendant held at a federal detention facility is not 'in custody' for the purposes of § 3585(a) when he is produced through a writ of habeas corpus ad prosequendum.") (quoting *United States v. Fermin,* 252 F.3d 102, 108 n. 10 (2d Cir.2001)). The writ simply "enables a jurisdiction 'to take temporary custody of a prisoner confined within another jurisdiction, and indict, prosecute and sentence' " the prisoner. *Greenough v. Hufford,* No. 1:12–CV–8836, 2013 WL 4534997 at \*8 (S.D.N.Y. Aug. 27, 2013) (citation omitted). When the federal prosecution is complete, "principles of comity require the return of the defendant to the primary custodian." *Dutton,* 713 F.Supp.2d at 201; *see also Ortiz v. Lara,* No. 1:11–CV–2092, 2013 WL 6083409 at \*1 (S.D.N.Y. Nov. 19, 2013) ("Generally, producing a state prisoner under a writ of habeas corpus ad prosequendum to answer federal charges does not relinquish state custody."); *United States v. Wusebio,* No. 1:04–CR–0607, 2007 WL 582745 at \*2 (S.D.N.Y. Feb. 21, 2007) (same). Federal custody does not commence until "the state custodian relinquishes the prisoner upon satisfaction of the prisoner's state obligation." *Dutton,* 713 F.Supp.2d at 200–201. A prisoner is "relinquished" by the state when he or she "is released on bail, the state charges are dismissed, the prisoner is released to parole, or the state sentence expires." *Wusebio,* 2007 WL 582745 at \*2 (citations omitted).

**\*5**  Pursuant to 18 U.S.C. § 3585(b), federal defendants may receive credit for time spent in official detention before the date the federal sentence commences if: (1) the detention was the result of the offense for which the federal sentence is ultimately imposed; or (2) the detention was the result of other charges for which the defendant was arrested after the commission of the offense for which the sentence was imposed, as long as that time has not been credited against another sentence. 18 U.S.C. § 3585(b)(1), (2). Section 3585(b) prohibits defendants from receiving "double credit for [their] detention time." *Wilson,* 503 U.S. at 337; *Lopez v. Terrell,* 654 F.3d 176, 184–85 (2d Cir.2011) (explaining that the BOP is prohibited from crediting time against a federal sentence that was already credited against a state sentence).

#### C. Application

Petitioner was in the primary custody of New York State by virtue of his arrest by New York state authorities on drug charges in 1999. New York State did not relinquish primary custody over petitioner during any time between December 1, 1999 and October 31, 2008, the date of his release to the custody of the United States Marshals Service upon completion of his state sentence. Petitioner was merely borrowed from New York State by writ of habeas corpus ad prosequendum, issued on October 4, 2001, in order to effectuate his appearance in the United States District Court in connection with his arrest and conviction for Indictment Number 1:01–CR–922. Dkt. No. 10–3, Exhibit C, Application for Writ of Habeas Corpus. Petitioner's federal prosecution did not terminate New York State's primary custody over him. *Lockenwitz,* 376 F. App'x at 150; *Dutton,* 713 F.Supp.2d at 201; *Ortiz,* 2013 WL 6083409 at *1; *Wusebio,* 2007 WL 582745 at *2.

The record contradicts petitioner's arguments that there was no writ of habeas corpus ad prosequendum issued, or that the writ was invalid. *See* Pet.; Mem. at 8–10; Reply at 2–4. The writ was captioned "Application for Writ of Habeas Corpus," but in the body of the document, the Assistant United States Attorney specified that the application was for the issuance of a writ of habeas corpus ad prosequendum. *See* Dkt. No. 10–3, Exhibit C. The writ also directed the United States Marshal to produce petitioner "on the date, at the time, and in the place recited above, and thereafter to maintain" petitioner "within the jurisdiction of this Court pending the satisfaction of this writ or the further orders of the Court." *Id.* To the extent petitioner argues that the writ is somehow invalid because it specifies that he was charged by indictment with violating only one criminal statute, 18 U.S.C. § 1959(a)(5), and not the other statutes charged in the indictment, that argument is meritless. The writ was issued in connection with Indictment Number 1:01–CR–0922, the same indictment upon which he was ultimately convicted. Dkt. No. 10–3, Exhibit C.

Moreover, the district court ordered petitioner's federal sentence to run consecutively to his New York State sentence. Dkt. No. 10–3, Exhibit D, Judgment in a Criminal Case, at 2 ("The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 10 years TO RUN CONSECUTIVE WITH THE STATE COURT SENTENCE.") (emphasis in original). Therefore, pursuant to 18 U.S.C. § 3585(a), petitioner's federal sentence could not commence until October 31, 2008, when he completed his New York sentence and was released to the United States Marshal. *Dutton,* 713 F.Supp.2d at 200–201. Petitioner was properly returned to DOCCS upon completion of his federal prosecution. *Dutton,* 713 F.Supp.2d at 201.

Finally, the 98–day period from December 1, 1999, through March 7, 2000, was credited to petitioner's New York state sentence. Dkt. No. 10–2, Erickson Dec. ¶ 7. Pursuant to 18 U.S.C. § 3585(b), petitioner cannot receive credit against his federal sentence for that 98–day period. He also cannot receive credit toward his federal sentence for the rest of the time he spent serving his state sentence. That time was credited to his state sentence and cannot be credited twice. 18 U.S.C. § 3585(b); *Wilson,* 503 U.S. at 337; Dkt. No. 10–2, Erickson Dec. at ¶ 12.

**\*6** In sum, the record shows that the BOP properly calculated petitioner's sentence, and his petition is therefore denied and dismissed.

#### IV. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that the petition for a writ of habeas corpus, Dkt. No. 1, is **DENIED AND DISMISSED;** and it is further

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**Lugo v. Hudson, Not Reported in Fed. Supp. (2014)**

Case 9:21-cv-01219-DNH-TWD    Document 11    Filed 10/21/24    Page 16 of 45

2014 WL 11350815

**All Citations**

Not Reported in Fed. Supp., 2014 WL 11350815

---

**End of Document**                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Thomas v. Warden FCI Ray Brook, Not Reported in Fed. Supp. (2021)

2021 WL 4086139

2021 WL 4086139
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gregory THOMAS, Petitioner,

v.

WARDEN FCI RAY BROOK, Respondent.

9:18-cv-00430 (MAD/TWD)
|
Signed 06/28/2021

**Attorneys and Law Firms**

Gregory Thomas, 13366-052, Petitioner, pro se, Ray Brook, Federal Correctional Institution, PO Box 900, Ray Brook, NY 12977

ANTOINETTE T. BACON, Acting United States Attorney, OF COUNSEL: EMER M. STACK, ESQ., Assistant United States Attorney, Northern District of New York, Attorney for Respondent, 100 S. Clinton St., Syracuse, NY 13261.

**REPORT-RECOMMENDATION AND ORDER**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

**\*1** This matter has been referred for a Report-Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c). Petitioner Gregory Thomas, an inmate at the Federal Correctional Institution ("FCI") in Ray Brook, New York, brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. No. 1.) Petitioner does not challenge his conviction, but rather alleges that the Federal Bureau of Prisons ("BOP") improperly denied him credit toward his federal sentence for time spent in state custody. Respondent Warden FCI Ray Brook has filed a response, together with the Declaration of Alan Ray, a Correctional Program Specialist employed by the BOP at the Designation and Sentence Computation Center in Grand Prairie, Texas. (Dkt. No. 5.) Petitioner filed a reply. (Dkt. No. 8.) For the reasons discussed below, the Court recommends denying and dismissing the petition.

**II. BACKGROUND**

On April 14, 2005, Petitioner was arrested by the Syracuse Police Department and charged with resisting arrest, loitering, and criminal possession of a controlled substance in the third and seventh degree in Onondaga County Court in case number I-2005-1205-1. (Dkt. No. 5-1 at ¶ 5; *see also* Dkt. No. 5-2 at 2-3. [1]) On April 19, 2005, a parole violator warrant (#436748) was lodged by the State of New York in Onondaga County Court in case number I-2001-0184-1. (Dkt. No. 5-1 at ¶ 6.)

[1]     Page citations refer to the pagination CM/ECF automatically generates. Excerpts from the record are reproduced exactly
        as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected unless indicated.

On July 20, 2005, while in state custody, Petitioner was indicted on federal charges in this Court in case number 5:05-CR-0322-13 (NAM). (Dkt. No. 5-2 at 3.) Petitioner was temporarily transferred to federal custody after the issuance of a writ of habeas corpus ad prosequendum on August 2, 2005. (Dkt. No. 5-1 at ¶ 7.) Although it appears the state charges filed in case number I-2005-1205-1 were dismissed on March 9, 2006, Petitioner remained in state custody related to the state parole violation in case number I-2001-0184-1. (*See* Dkt. No. 1-1 at 36; Dkt. No. 5-10 at 8.)

On May 23, 2007, following a jury trial, the Honorable Norman A. Mordue, Senior United States District Judge, sentenced Petitioner in case number 5:05-CR-0322-13 (NAM) to a term of imprisonment of 360 months for conspiracy to engage in a pattern of racketeering activity. (Dkt. No. 5-1 at ¶ 8. [2] )

[2]    On September 13, 2011, Petitioner's sentence was reduced from 360 months to 292 months. (Dkt. No. 5-1 at ¶ 11.) A review of the docket reveals that on March 30, 2018, Petitioner's sentence was reduced from 292 months to 235 months. *See United States v. Thomas*, No. 5:05-CR-0322-13 (NAM), Dkt. No. 1107.

On June 14, 2007, after sentencing, Petitioner was returned to state custody. (Dkt. No. 5-1 at ¶ 9.) It thus appears Petitioner remained in temporary federal confinement through his federal trial and sentencing.

 **\*2**  On July 31, 2007, Petitioner's state parole was revoked, and he was re-paroled and taken into federal custody. *Id.* at ¶ 10. The BOP calculated Petitioner's federal sentence beginning on July 31, 2007, the same date he was released on parole from the State of New York. *Id.* at ¶ 15. He received five days of jail credit from April 14, 2005, through April 18, 2005. *Id.*

On October 10, 2014, Petitioner filed an administrative grievance with the BOP seeking federal credit for time served in state custody from August 2, 2005, through May 23, 2007. (Dkt. No. 5-15 at 10.) On November 12, 2014, the BOP denied Petitioner's request:

Originally, you were re-paroled from your New York Sentence on May 20, 2004. On April 19, 2005 you were remanded back to New York State custody for violating your Parole. According to your Presentence Investigation Report, you remained in "Primary" state custody related to the state parole violation. Additionally, your Jail Credit memorandum dated August 28, 2007 states in part "04-19-2005 Parole Warrant issued, and inmate held on New York State Parole warrant. On 07-31-2007 parole revoked, and re-paroled same day. Total credit given to parole revocation 843 days from 04-19-2005 to 07-31-2007. Information verified with New York State Parole."

On August 2, 2005, while you were in service of your New York State parole sentence, you were produced on a Federal Writ to answer charges for your instant federal offense. On May 23, 2007, while on Federal Writ from New York State, you were sentenced to three hundred sixty (360) months for Conspiracy to Engage in a Pattern of Racketeering Activity. Subsequently, on September 13, 2011, your sentence was amended to a term of two hundred ninety-two (292) months. Jail credit awarded to your federal sentence was from April 14, 2005 to April 18, 2005....

With regard to the period you spent in Federal custody, documentation provided by New York State Division of Parole reflected the period of credit you are seeking has already been credited to the service of the state sentence. To double-credit this period to your federal sentence would be contrary to the law, Title 18 U.S.C. § 3585(b), and Bureau of Prisons policy.

Therefore, based on the foregoing, we have accurately computed your sentence computation as starting on July 31, 2007, the date you were re-paroled from New York State.

*Id.* at 8-9. Petitioner exhausted his administrative remedies by appealing the denial to the Regional Office and Central Office. *See id.* at 2-7.

During the administrative grievance process Petitioner also argued that he should receive a nunc pro tunc retroactive designation, and that the BOP should exercise its discretion to designate a state prison as the place for service of a federal sentence. *Id.* On May 6, 2015, the BOP sent a letter to Judge Mordue to obtain the Court's position regarding the granting of a retroactive designation allowing Petitioner's federal sentence to be served concurrent to his state sentence, explaining, in part, that:

On May 23, 2007, Gregory Thomas was sentenced by the Court to a 360-month (later reduced to 292-month) term of confinement for Conspiracy to Engage in a Pattern of Racketeering Activity. At the time the federal sentence was imposed, Mr. Thomas was under the primary jurisdiction of state authorities in New York, and in federal custody pursuant to a Writ.

2021 WL 4086139

The respective Judgment in Criminal Case was silent regarding any relationship with the forthcoming action in state court. Following sentencing, Mr. Thomas was appropriately returned to state authorities and the U.S. District Court Judgment was filed as a detainer.

**\*3** On July 31, 2007, Mr. Thomas' state parole was revoked for the offense Criminal Possession of a Controlled Substance and he was re-paroled.

Mr. Thomas satisfied his state obligation on July 31, 2007, and was released to the federal detainer to commence the service of his federal sentence as provided by Title 18 U.S.C. § 3585(a).

Mr. Thomas has requested that his federal sentence be served concurrently with the state term, which would be accomplished by the Bureau of Prisons (Bureau) designating the state institution for service of his federal sentence. Such action would thereby reduce the total amount of time spent in custody. In Setser v. United States, —— U.S. ——, 132 S.Ct. 1463, 192 [ ] (2012) the United States Supreme Court held that the authority to order a federal sentence concurrent or consecutive with any other sentence rests with the federal sentencing court.

Such a retroactive designation is made if the federal sentencing Court indicates the federal term is to be concurrent to the state term, or if the federal sentencing Court does not state its intention, such designation may be completed after the review of all factors under Title 18 U.S.C. § 3621(b).

(Dkt No. 5-10 at 2-3.)

On or about August 10, 2015, Judge Mordue responded both by telephone, and email, as follows:

> The Judge reviewed your letter dated May 6, 2015, including consideration of the Court's authority to impose a consecutive or concurrent sentence in this case, and after reviewing the case material, he notes it was his intention to have the federal sentence run consecutively with the undischarged state term of imprisonment and therefore, he finds no reason to deviate now from that decision.

(Dkt. No. 5-11 at 2.) On August 11, 2015, the BOP denied Petitioner's request for a retroactive designation. (Dkt. No. 5-12 at 2.) The BOP specifically considered and applied Judge Mordue's direction in computing Petitioner's sentence. (Dkt. No. 5-1 at ¶¶ 13,14; *see* Dkt. No. 5-12 at 2.)

At the time of briefing, Petitioner's projected release date was October 29, 2024. *Id.* According to the publicly available website maintained by the BOP, Petitioner's projected release date is now June 26, 2024. [3]

[3]    *See* https://www.bop.gov/inmateloc/ (BOP Register Number 13366-052) (last visited June 28, 2021).

As noted, Petitioner argues that he is entitled to 21 months and 23 days of credit toward his federal sentence, representing time that he spent in state custody between August 2, 2005, and May 23, 2007. (Dkt. No. 1 at 3.) According to Petitioner, his state charges were dismissed in case number I-2005-1205-1 and because he "wasn't found guilty of a crime" in that case, his time in "county jail" should be credited towards his federal sentence pursuant to 18 U.S.C. § 3585(b). *Id.*; *see also* Dkt. No. 1-1 at 36.

Respondent argues for denial of the petition, asserting that the BOP's sentence calculation is correct. (Dkt. No. 5.) Specifically, Respondent argues that (1) Judge Mordue has already denied Petitioner's request for his federal sentence to run concurrently with his state sentence, and Petitioner's request would effectively nullify the direction of the sentencing court; (2) when a state inmate spends time on a federal writ, the federal court merely "borrows" the inmate and he continues serving his state term of

Case 9:21-cv-01219-DNH-TWD   Document 11   Filed 10/21/24   Page 20 of 45

Thomas v. Warden FCI Ray Brook, Not Reported in Fed. Supp. (2021)
2021 WL 4086139

imprisonment, which is not credited toward any subsequent federal sentence; and (3) Petitioner is seeking credit for time that has already been credited toward his state term.

**\*4** In his reply, Petitioner maintains that he was improperly denied credit against his federal sentence from August 2, 2005, through May 23, 2007, because, on March 9, 2006, Onondaga County State Court Judge John J. Brunetti dismissed the state charges in case number I-2005-1205-1, which "was never credited to [his] state or federal sentence." (Dkt. No. 8.) He claims the BOP "committed an error, as well as abuse of discretion by acting contrary to law" "by failing to include Petitioner's credit from August 2, 2005 to May 23, 2007 against his federal sentence, in which facts shows was never credited to Thomas' state or federal sentence." *Id.* at 4. Lastly, Petitioner argues that had he "pleaded guilty to those pending state charges and had been sentenced to a period of incarceration, it would have been incumbent upon the district court to sentence [him] to concurrent time to that sentence, pursuant to U.S.S.G. § 5G1.3(b)(2)." *Id.* at 3 (alteration in original).

## III. DISCUSSION

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A § 2241 petition is generally the appropriate vehicle to raise claims arising from a prison official's computation of a prisoner's sentence. *Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003).

Although a prisoner may later seek judicial review, it is the responsibility of the BOP, and not the courts, to determine the commencement of a federal sentence and calculate any credit toward that sentence for time already served. *Tisdale v. Menifee*, 166 F. Supp. 2d 789, 791 (S.D.N.Y. 2001) (citing *United States v. Montez–Gaviria*, 163 F.3d 697, 700-01 (2d Cir. 1998)). Thus, with respect to a § 2241 petition challenging the computation of credit on a federal sentence, a district court has the power only to review a decision by the BOP, not to make credit determinations in the first instance. *Wright v. Hudson*, No. 9:12-CV-01638-JKS, 2015 WL 5971055, at \*1 (N.D.N.Y. Oct. 14, 2015).

The earliest that a federal sentence may begin to run is on the date that it was imposed. *United States v. Labeille-Soto*, 163 F.3d 93, 98 (2d Cir. 1998). The sentence commences when the defendant is received into custody at the detention facility designated by the BOP. 18 U.S.C. § 3585(a); *Labeille-Soto*, 163 F.3d at 98. When a defendant was in primary state custody at the time his or her federal sentence was imposed, the BOP must determine whether the district court intended the federal sentence to run concurrently with, or consecutively to, the state sentence. 18 U.S.C. § 3584(a); *Dutton v. U.S. Attorney Gen.*, 713 F. Supp. 2d 194, 199 (W.D.N.Y. 2010).

If the district court's judgment is silent on this issue, the court's silence is construed as an intent to impose a consecutive sentence, and the federal sentence commences only when primary state custody over the defendant is relinquished. *Clapper v. Langrod*, 186 F. Supp. 3d 235, 238 (N.D.N.Y. 2016) (citing 18 U.S.C. § 3584(a)). An inmate in this situation may ask the BOP for a retroactive designation of the non-federal prison as the institution for service of the federal sentence. *Id.* (citing 18 U.S.C. § 3621(b)). The BOP then considers the inmate's personal circumstances in relation to the factors set forth at 18 U.S.C. § 3621(b) to determine if a nunc pro tunc designation is consistent with the intent of the federal sentencing court or the criminal justice system. *Id.* "The [BOP's] decision regarding nunc pro tunc designation is reviewed for abuse of discretion." *Jennings v. Schult*, 377 F. App'x 97, 98 (2d Cir. 2010) (summary order).

If, however, the district court explicitly stated the federal sentence should run concurrently with the state sentence, the BOP will "designate the State correctional facility as the place for the defendant to serve his Federal sentence," and the federal sentence "will be deemed to commence upon imposition." *Clapper*, 186 F. Supp. 3d at 238 (quoting *Dutton*, 713 F. Supp. 2d at 199 (citing 18 U.S.C. §§ 3585(a), 3621(b))).

**\*5** When the BOP calculates any credit toward a federal sentence from time served before the sentence was imposed, 18 U.S.C. § 3585(b) requires that the defendant "receive credit only for detention time 'that has not been credited against another sentence.' " *United States v. Wilson*, 503 U.S. 329, 333 (1992) (quoting 18 U.S.C. § 3585(b)). Therefore, under 18 U.S.C. § 3585(b), the BOP cannot grant an inmate credit toward the federal sentence for the same period of time in custody that has

Case 9:21-cv-01219-DNH-TWD    Document 11    Filed 10/21/24    Page 21 of 45

Thomas v. Warden FCI Ray Brook, Not Reported in Fed. Supp. (2021)

2021 WL 4086139

also been credited toward a state sentence. *Id.* at 337 ("Congress made clear that a defendant could not receive a double credit for his detention time."); *see Lopez v. Terrell*, 654 F.3d 176, 184-85 (2d Cir. 2011) (explaining that the BOP is prohibited from crediting time against a federal sentence that was already credited against a state sentence); *see also Ortiz v. Breckon*, No. 9:17-CV-559 (LEK), 2018 WL 557879, at *3 (N.D.N.Y. Jan. 22, 2018) ("Time that has been credited to a state sentence may not also be credited toward a federal sentence because [18 U.S.C.] § 3585(b) prohibits defendants from receiving 'double credit for [their] detention time.' ") (alteration in original) (quoting *Wilson*, 503 U.S. at 337 (other citations omitted)).

In this case, the BOP calculated Petitioner's federal sentence beginning on July 31, 2007, the same date he was released on parole from the State of New York. (Dkt. No. 5-1 at ¶ 15.) He received five days of jail credit from April 14, 2005, through April 18, 2005. *Id.* Because the time between August 2, 2005, and May 27, 2007, was credited to Petitioner's state sentence for the parole violation, the BOP was correct not to credit it towards his federal sentence. [4] *See Labeille-Soto*, 163 F.3d at 99 ("[A] defendant has no right to credit on his federal sentence for time that has been credited against his prior state sentence."); *Reynolds v. Warden of FCI Ray Brook*, No. 9:16-CV-1264 (TJM/TWD), 2020 WL 918766, at *1 (N.D.N.Y. Feb. 26, 2020) (petitioner is not entitled to credit against a federal sentence for time he spent incarcerated that counted towards the term of his state sentence), *aff'd*, ––– F. App'x ––––, 2021 WL 2550413 (2d Cir. June 22, 2021); *see also United States v. Fermin*, 252 F.3d 102, 108 n.10 (2d Cir. 2001) ("The Bureau of Prisons could not credit Fermin for the time he had already served because it was credited against another sentence -- the state parole violation....").

[4]    Although Petitioner claims that the time he spent in state custody from August 2, 2005, to May 23, 2007, was "never credited to [his] state or federal sentence," (Dkt. No. 8 at 4), the record demonstrates the 21 months and 23 days for which he seeks credit on his federal sentence were credited against his state sentence. (*See* Dkt. No. 5-15 at 8, indicating "total credit given to parole revocation 843 days from 04-19-2005 to 07-31-2007".)

To the extent Petitioner argues that his federal sentence should be deemed to have commenced as of August 5, 2005, when he first entered federal custody pursuant to the writ of habeas corpus ad prosequendum, this argument fails. As Respondent correctly notes, "[w]hen a state prisoner is transferred into federal custody pursuant to the writ, the state retains primary custody over him or her because the prisoner is 'on loan' to federal authorities." (Dkt. No. 5 at 4, quoting *Clapper*, 186 F. Supp. 3d at 239.); *see also United States v. Smith*, 812 F. Supp. 368, 371 (E.D.N.Y. 1993) ("A federal writ of habeas corpus ad prosequendum merely loans the prisoner to federal authorities."); *id.* at 371 ("A federal sentence does not begin to run ... when the defendant is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligations."). Additionally, the date of August 5, 2005, precedes his May 23, 2007, sentencing by almost two years and, as noted above, "under 18 U.S.C. § 3585(a), a federal sentence cannot commence prior to the date on which it is imposed." *Lopez v. Terrell*, 654 F.3d 176, 185 (2d Cir. 2011).

**\*6** Moreover, to the extent Petitioner argued during the administrative grievance process that he should receive a nunc pro tunc retroactive designation, the Court concludes that the BOP did not abuse its discretion in denying Petitioner's request to designate his state facility as his place of federal confinement, either for the duration of his state custody or for the period that he was temporarily transferred to federal custody. As discussed above, the BOP contacted Judge Mordue for the Court's position on a concurrent designation and, thereafter, considered the 18 U.S.C. § 3621(b) factors, including "any statement by the court that imposed the sentence," and ultimately denied Petitioner's request. (Dkt. No. 5-1 at ¶¶ 13,14; *see* Dkt. Nos. 5-10 through 5-12, 5-15.) *See, e.g.*, *Wright*, 2015 WL 5971055, at *1 (dismissing § 2241 petition where the record showed that the BOP considered the 18 U.S.C. § 3621(b) factors). As pointed out by Respondent, the BOP calculated Petitioner's sentence exactly as directed by the sentencing judge. (Dkt. No. 5 at 3-4.) *See also Ortiz*, 2018 WL 557879, at *3 ("Because the BOP lacked authority to designate the state facility as Petitioner's place of federal confinement—thereby causing his sentences to run concurrently, defying the federal sentencing court's intent—it did not abuse its discretion by denying Petitioner's request for a nunc pro tunc designation.").

2021 WL 4086139

Lastly, Petitioner suggests in his reply memorandum that had he "pleaded guilty to those pending state charges and had been sentenced to a period of incarceration, it would have been incumbent upon the district court to sentence [him] to concurrent time to that sentence, pursuant to U.S.S.G. § 5G1.3(b)(2)." (Dkt. No. 8 at 3, alteration in original.) "But arguments raised for the first time in a reply memorandum are waived and need not be considered." *Cotona v. Fed. Bureau of Prisons*, No. 13 CIV. 609 JMF, 2013 WL 5526238, at *2 (S.D.N.Y. Oct. 7, 2013) (citing *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010); *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 169 (2d Cir. 2006)). [5]

[5]     In any event, to the extent Petitioner "is arguing for relief under Section 5G1.3(b), this issue is more appropriately resolved by the sentencing court pursuant to a motion under Section 2255 rather than this Court pursuant to a petition under Section 2241." *Reynolds*, 2019 WL 8064012, at *2 n.2 (citing *Dixon v. Terrell*, No. 10-CV-5262, 2011 WL 4543712, at *11 (E.D.N.Y. Sept. 29, 2011); *Jackson v. Killian*, No. 08–CV–4386, 2009 WL 1835004, at *3 (S.D.N.Y. June 23, 2004) ("Challenging the sentencing court's section 5G1.3 calculation is 'more appropriately brought as an issue for the sentencing court pursuant to a motion under [S]ection 2255, rather than the district court in a [S]ection 2241 habeas petition where petitioner is held in custody.' " (quoting *Saunders v. Unnamed Warden*, No. 07-CV-4293, 2008 WL 2775763, at *7 (D.N.J. July 14, 2008) (denying habeas petition pursuant to Section 2241 where petitioner argued that he was entitled to a downward departure or sentence reduction under Section 5G1.3)))). The Court expresses no opinion on the success of any such motion.

Based on the foregoing, all of Petitioner's jail time has been credited to either his federal or state sentence, and the BOP's calculations are correct. Any remaining arguments are without merit.

**WHEREFORE**, based on the findings above, it is hereby

**RECOMMENDED** that the petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Report-Recommendation and Order on Petitioner, along with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4086139

---

                 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 4084306

2021 WL 4084306
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gregory THOMAS, Petitioner,

v.

WARDEN FCI RAY BROOK, Respondent.

9:18-cv-00430 (MAD/TWD)
|
Signed 09/08/2021

**Attorneys and Law Firms**

GREGORY THOMAS, 13366-052, Ray Brook, Federal Correctional Institution, P.O. Box 900, Ray Brook, New York 12977, Petitioner, pro se.

OF COUNSEL: EMER M. STACK, AUSA, OFFICE OF THE UNITED STATES, ATTORNEY - SYRACUSE, 100 South Clinton Street, Suite 900, Syracuse, New York 13261, Attorneys for Respondent.

## ORDER

Mae A. D'Agostino, United States District Judge:

**\*1** Petitioner Gregory Thomas, an inmate at the Federal Correctional Institution ("FCI") in Ray Brook, New York, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 9, 2018. *See* Dkt. No. 1. Plaintiff alleges that the Federal Bureau of Prisons ("BOP") improperly denied him credit toward his federal sentence for time spent in state custody. *See* Dkt. No. 1 at 3. On June 28, 2021, Magistrate Judge Dancks issued a Report-Recommendation and Order, recommending that Plaintiff's petition be denied and dismissed. *See* Dkt. No. 15.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (*quoting Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Plaintiff has not filed an objection to the Report-Recommendation and Order. When a party declines to file an objection, the court reviews a recommendation for clear error. *See McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1). Because the Plaintiff has not filed an objection, the Court will review the recommendation for clear error.

In the present matter, the Court finds that Magistrate Judge Dancks correctly determined that the petition must be denied and dismissed. Petitioner cannot receive credit toward his federal sentence for the same period of time that was credited toward a state sentence. *United States v. Wilson*, 503 U.S. 329, 333, 337 (1992). Magistrate Judge Dancks correctly noted that the period of time between August 2, 2005 and May 27, 2007 was credited to Petitioner's state sentence, and therefore could not be credited to his federal sentence. Dkt. No. 15 at 8-10.

To the extent Petitioner also seeks review of the denial of a nunc pro tunc designation for the state prison as a place of federal confinement, Magistrate Judge Dancks correctly ruled that the BOP did not abuse its discretion in its denial. The BOP may grant the request for the retroactive designation of the non-federal prison as the institution for service of the federal sentence, pursuant to 18 U.S.C. § 3621(b). "The [BOP's] decision regarding nunc pro tunc designation is reviewed for abuse of discretion." *Jennings v. Schult*, 377 Fed. Appx. 97, 98 (2d Cir. 2010).

The Court agrees with Magistrate Judge Dancks that the BOP did not abuse its discretion in denying the nunc pro tunc designation. The BOP contacted the federal sentencing judge, Judge Mordue, and adequately considered the factors in 18 U.S.C. § 3621(b) before issuing its denial. *See* Dkt. No. 5-1 at ¶ 12; Dkt. No. 5-12.

**\*2** After carefully reviewing the Report-Recommendation and Order, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Dancks' Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that the petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4084306

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2013)

2013 WL 12177171

2013 WL 12177171
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

David CRUZ, Petitioner,

v.

BUREAU OF PRISONS, Eric Pfisterer, U.S. Attorney, James Walsh, Superintendent, et al., Respondents.

10 Civ. 5460 (SHS) (DF)
|
Signed 03/22/2013

**Attorneys and Law Firms**

David Cruz, Fort DIX, NJ, pro se.

Carina Hyatt Schoenberger, Ellen Melissa London, U.S. Attorney's Office, SDNY, New York, NY, for Respondents.

## REPORT AND RECOMMENDATION

DEBRA FREEMAN, United States Magistrate Judge

**\*1  TO THE HONORABLE SIDNEY H. STEIN, U.S.D.J.:**

Pursuant to 28 U.S.C. § 2441, Petitioner *pro se* David (a/k/a Derrik) Cruz ("Petitioner") challenges the denial by the Bureau of Federal Prisons (the "BOP") of his request for a "*nunc pro tunc*" designation" of a New York State correctional facility ( where he is currently incarcerated on a state sentence) as the place of his federal confinement, so that his state and federal sentences could run concurrently. Petitioner requests that the Court "compel the Bureau of Prisons to review his request ... and grant Petitioner a concurrent designation."[1] For the reasons that follow, I respectfully recommend that the petition be denied.

[1]     Petitioner's Traverse and Memorandum of Law in Opposition to Respondent's Return and Memorandum of Law in Opposition to Writ of Habeas Corpus, dated Feb. 8, 2011 ("Traverse") (Dkt. 13), at 23.

## BACKGROUND

### A. Petitioner's State and Federal Convictions and Sentences

Petitioner was arrested on state charges in 1995, although it is somewhat unclear as to whether he was initially taken into custody as the result of a parole violation or on new charges.[2] In either event, later that year, while he was in state custody, he was indicted on entirely separate federal charges, in the United States District Court for the Middle District of Pennsylvania. (*See* Return, at 1-2.) Petitioner remained in state custody until, in October, 1995, the United States Marshals Service ("USMS") took custody of him, pursuant to a writ of *habeas corpus ad prosequendum*, for the purposes of his federal trial. (*Id.*) Petitioner was then federally convicted of drug charges and was sentenced by the federal district court on May 1, 1996, to 324 months in prison.[3] Although the Pre-Sentence Investigation Report (Johnson Decl., Ex. A) mentioned the pending state charges against Petitioner, the federal sentencing court's judgment made no reference to any potential state sentence that could result, should Petitioner eventually be convicted of those state charges.

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2013)

2013 WL 12177171

Case 9:21-cv-01219-DNH-TWD    Document 11    Filed 10/21/24    Page 26 of 45

[2]   Petitioner contends that he was initially arrested in May, 1995, by Pennsylvania police, on a fugitive warrant, extradited to New York, and sentenced to a six-month "hold" for parole violations "[o]n or about July/1995." (Traverse, at 1-2.) Respondent, however, asserts that Petitioner was arrested in July, 1995, by New York City police, on attempted murder and related charges. (*See* Respondent's Return and Memorandum of Law in Opposition to Writ of Habeas Corpus, dated Jan. 10, 2011 ("Return") (Dkt. 8), at 1; *see also* Declaration of Adam Johnson, dated Jan. 7, 2011 ("Johnson Decl.") (Dkt. 9), Ex. A.)

[3]   This term was later reduced to 262 months pursuant to the retroactive crack-cocaine amendment. *United States v. Cruz*, Mo. 1:CR-95-204-01, 2008 WL 4671793 (M.D. Pa. Oct. 17, 2008).

Shortly after Petitioner's federal sentence was imposed, he was returned to state custody and was detained, on his pending state charges, by the New York City Department of Corrections. (*See* Return, at 2; Johnson Decl., Ex. B.) After a jury trial in state court, Petitioner was convicted, under state law, of attempted murder, and in October, 1997, he was sentenced on that charge to 12 $1/_2$ to 25 years in prison. (*See* Johnson Decl., Ex. D, at 3.) Petitioner is currently serving his state sentence in the Sullivan Correctional Facility, a New York State prison.

### B. Petitioner's Request That His Sentences Run Concurrently

**\*2**  By December, 2006, Petitioner began making inquiries to federal authorities regarding his pending federal sentence. (*See* Traverse, Ex. 3 (Letter from Randy S. Eternick to Derrick Luis Cruz, dated Dec. 4, 2006).) Petitioner sent several letters to the BOP's Designation and Sentence Computation Center (the "DSCC") and other governmental units in 2008 and 2009, requesting a *nunc pro tunc* designation that would allow his state and federal sentences to run concurrently.[4]

[4]   *See* Traverse, Ex. 4 (Letter from Petitioner to P.M. Laird, Warden, dated May 20, 2008, requesting "Legal Date Computation"); *see also* Traverse, Ex. 5 (Letter from J. Gatto to Petitioner, dated Nov. 10, 2008, advising Petitioner that requests for retroactive designation of state facility for concurrent service of federal sentence should be directed to the DSCC); *id.*, Ex. 6 (Letter from Petitioner to the DSCC, dated Dec. 30, 2008, requesting that the DSCC "consider running my federal sentence concurrent 'nunc pro tunc' with already serving sentence in the State of New York"); *id.*, Ex. 7 (Letter from Petitioner to the DSCC, dated Feb. 24, 2009, requesting status of previous request for *nunc pro tunc* designation); *id.*, Ex. 8 (Letter from Petitioner to Mary E. D'Andreas, Clerk of the United States District Court for the Middle District of Pennsylvania, dated Apr. 21, 2009, requesting Court to ask the DSCC to respond to request for *nunc pro tunc* designation).

After receiving Petitioner's request, the BOP sent a letter to the federal sentencing court, asking for its "position on a retroactive designation in this case." (Johnson Decl., Ex. I (Letter from Delbert G. Sauers to Hon. William W. Caldwell, dated Feb. 16, 2009).) In a letter dated March 10, 2009, the sentencing court responded that it found "nothing that would warrant a concurrent sentence and object[ed] to a favorable designation by the Bureau of Prisons in this case." (*Id.*, Ex. J (Letter from Hon. William W. Caldwell to Delbert G. Sauers, dated Mar. 10, 2009).)

In May, 2009, the BOP informed Petitioner by letter that it had "determined that a 'nunc pro tunc' designation [was] not consistent with the goals of the criminal justice system." (Traverse, Ex. 9 (Letter from Delbert G. Sauers to Petitioner, dated May 19, 2009).) The BOP's letter stated that it had reviewed Petitioner's request "according to the factors provided in 18 U.S.C. § 3621(b)" (*id.*, at 1). and had determined that the second, third, and fourth factors listed in the statute were the relevant ones in Petitioner's case (*id.*). The BOP concluded that all three of those factors—"the history and characteristics of the prisoner," "the nature and circumstances of the offense," and "any statement by the court that imposed the [federal] sentence ...," 8 U.S.C. § 3621 (b)(2)-(5)—favored consecutive prison terms in Petitioner's case, not a *nunc pro time* designation. (*See* Traverse, Ex. 9.)

On June 29, 2009, Petitioner wrote to the then-director of the BOP, requesting a review of the agency's determination.[5] (*Id.*, Ex. 13 (Letter to Harley G. Lapin from Petitioner, dated June 29, 2009).) Petitioner states that he received no response. (*Id.*, at 4.)

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2013)

2013 WL 12177171

5    The BOP's multi-level Administrative Remedy Program for exhausting administrative claims did not apply to Petitioner because he was in state custody. *See* 28 C.F.R. 452.10(b) ("This Program applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement. This Program does not apply to inmates confined in other non-federal facilities.").

### C. The Action in this Court

**\*3** Petitioner commenced this action for relief pursuant to 28 U.S.C. § 2241, by a petition dated June 14, 2010 (later replaced by the operative Amended Petition, dated Sept. 28, 2010 ("Am. Pet.") (Dkt. 4)). As Petitioner is proceeding *pro se*, the Court reads his papers "liberally" and "interpret[s] them to raise the strongest arguments that they suggest." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). Petitioner appears to challenge the BOP's interpretation of the law, the constitutionality of the BOP's purported authority to make the determination as to how his sentences should run, and the BOP's particular decision-making process in his case. (*See generally* Am. Pet.)

On January 10, 2011, the BOP ("Respondent"[6]) submitted a Return (Dkt. 8) and supporting Declaration (Johnson Decl. (Dkt. 9)). In its opposition, Respondent principally argues that Petitioner has misconstrued the law regarding when his federal sentence did, and should have, commenced, and that the BOP did not abuse its discretion in denying Petitioner's request for a retroactive determination that his federal sentence should run concurrently with his state sentence.

6    The Amended Petition names the "Bureau of Prison[s], Eric Pfisterer, U.S. Attorney, James Walsh, Superintendent, et al." as Respondents (Am. Pet., at 1), but the BOP is the only named respondent that has appeared to oppose Petitioner's claims (*see* Return, at 1).

Petitioner submitted a Traverse on February 14, 2011 (Dkt. 13), setting out his arguments in greater detail. The Traverse also attaches additional documents not attached to the Amended Petition, most notably the series of letters between Petitioner and various BOP officials, in which Petitioner initially set out his request and reasons for a *nunc pro tunc* determination that his state and federal sentences could run concurrently, and in which the BOP set out its reasons for denying the request.

### DISCUSSION

## I. APPLICABLE LEGAL STANDARDS

### A. District Court's Power To Order That a Federal Sentence Be Served Consecutive to, or Concurrent with, a Not-Yet-Imposed State Sentence

Where an individual who is already facing state charges is transferred from state to federal custody to face separate federal charges, the federal government can interfere with the state's jurisdiction only for limited purposes, and must generally return the individual to state custody to serve any state sentence before taking the individual back into federal custody to serve his federal sentence. This is because "[t]he 'sovereignty which first arrests the individual acquires the right to prior and exclusive jurisdiction over him,'" jurisdiction that "'is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty.'" *Rosemond v. Menifee*, 137 F. Supp. 2d 270, 272-73 (S.D.N.Y. 2000) (quoting *In re Liberatore*, 574 F.2d 78, 89 (2d Cir. 1978)). The "transfer of an inmate to federal court pursuant to a writ of habeas corpus ad prosequendum does not amount to a relinquishment of primary jurisdiction." *Id.* In other words, in a case like this one, where a defendant is initially arrested by state authorities and then "borrowed" by federal authorities for the purpose of federal indictment, trial, and/or sentencing, the state retains primary jurisdiction throughout the federal proceedings. Even if the federal court imposes a sentence, the defendant cannot be taken into federal custody to serve that sentence until the exhaustion of the state's jurisdiction over him. Absent further intervention, then, the defendant must complete his state sentence before commencing service of his federal one.

Case 9:21-cv-01219-DNH-TWD   Document 11   Filed 10/21/24   Page 28 of 45

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2013)

2013 WL 12177171

**\*4** Where a defendant faces both federal and state convictions, the federal district court has the authority to order that its sentence be served concurrent with, or consecutive to, the defendant's state sentence. *See* 18 U.S.C. § 3584(a) (quoted *infra*, at n. 8). As with any aspect of a district court's sentence, however, the ultimate effectuation of the sentence falls to the BOP. The mechanism by which the BOP may effectuate the concurrent service of federal and state sentences where a federally convicted defendant is in primary state custody, in a slate facility, is a product of the BOP's authority to "designate the place of the prisoner's [federal] imprisonment" under 18 U.S.C. § 3621(b). Under federal law, a federal sentence officially begins at the time the defendant is "received" in custody, "to commence service of sentence at[ ] the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). It is the BOP that determines which "detention facility" will be the place where the federal sentence is to be served, *see* 18 U.S.C. § 3621(b), and the BOP has the authority to "designate any available penal or correctional facility that meets the minimum standards ... established by the Bureau, whether maintained by the Federal Government *or otherwise.*" *Id.* (emphasis added). The BOP thus has the discretion to select the state prison where an inmate is being held as the place of his federal confinement, allowing the federal and state sentences to run concurrently.

The BOP even has the authority to make such a designation after the fact (for example, once the state exhausts its jurisdiction by full imposition of its sentence, and turns the prisoner over to federal custody), "*nunc pro tunc*" to the date the state prison term commenced. *See Setser v. United States*, 132 S. Ct. 1463, 1468 n. 1 (2012) (noting that BOP sometimes designates state facility as place of federal confinement "while the prisoner is in state custody, and sometimes makes a *nunc pro tunc* designation once the prisoner enters federal custody"); *Barden v. Keohane*, 921 F.2d 476, 483-84 (3d Cir. 1990) (holding that BOP had discretion to consider inmate request for *nunc pro tunc* designation that would make state and federal sentences run concurrently); *see also McCarthy v. Doe*, 146 F.3d 118, 122-23 (2d Cir. 1998) (adopting *Barden* rule as law of Second Circuit).

In its recent decision in *Setser*, the Supreme Court held that a federal district court not only has the authority to order its sentence to run concurrently with, or consecutively to, an existing state sentence, but also has the authority to make a concurrency determination with respect to its federal sentence and a state sentence that is merely anticipated. *Setser*, 132 S. Ct. at 1468. The Court, however, did not directly address the limits of the BOP's discretionary authority to make such a determination itself, in a case where the district court remains silent as to how its federal sentence should run with any anticipated state prison term instead of explicitly exercising the court's authority to order concurrent or consecutive terms.

### B. BOP's Discretionary Authority to Determine Concurrency

#### 1. Scope of the BOP's Authority Prior To *Setser*

In this case, the BOP's determination of Petitioner's request for concurrency was made in 2009, before the Supreme Court issued its decision in *Setser.* At that time, courts in this circuit and elsewhere had understood that the BOP had the authority under its place-of-confinement authority (*i.e.*, under Section 3621(b)) not only to effectuate a district court's stated determination that a defendant's sentences should run concurrently, but also to make such a determination on its own. *See McCarthy*, 146 F.3d at 121-23 (2d Cir. 1998) (affirming authority of BOP to designate state facility as place of federal confinement *nunc pro tunc*, effectively running state and federal sentences concurrently, even where sentencing court did not order concurrency).

Courts in this circuit had also held that prisoners had "a right to request the BOP to review whether a nunc pro tunc designation of their state facility as a site of federal incarceration would be appropriate, if the BOP did not on its own provide such a designation." *Mitchell v. Lara*, No. 11 Civ. 1540 (LBS), 2011 WL 5075117, at \*3 (S.D.N.Y. Oct. 25, 2011). A federal court could order the BOP to consider whether a particular prisoner's request for a *nunc pro tunc* designation should be granted, and could issue a non-binding recommendation in favor of such a designation. *See United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997) (holding court's recommendation is "not binding," as district court had "no authority to *require* the BOP to credit [a defendant] with the time he spent in state custody" (emphasis added)); *United States v. Benitez*, No. 98 Crim. 874 (LAP), 2009

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2013)
2013 WL 12177171

Case 9:21-cv-01219-DNH-TWD    Document 11    Filed 10/21/24    Page 29 of 45

WL 4857491, at *3 (S.D.N.Y. Dec. 11, 2009) (ordering BOP to "promptly review" inmate's application and recommending that BOP grant request).

**\*5** In determining whether to issue a *nunc pro tunc* designation in a particular case, the BOP would consider, at a minimum, the five factors listed in Section 3621 (b):

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the [federal] sentence—

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994( a)(2) of title 28.

18 U.S.C. § 3621(b); *see also Levine v. Apker*, 455 F. 3d 71, 84 (2d Cir. 2006) (holding consideration of all five factors "mandatory" but noting that factors are "non-exclusive").

In addition, the BOP had developed internal regulations specifically governing inmate requests for *nunc pro tunc* designations. *See* Program Statement 5160.05 ("PS 5160.05" or the "Program Statement") § 9(b)(4). The Program Statement provided that, under *Barden*, the BOP would "consider[ ] an inmate's request for pre-sentence credit toward a federal sentence for time spent in service of a state sentence as a request for a *nunc pro tunc* designation." PS 5160.05 § 9(b)(4). The Program Statement then set out policies by which the BOP would exercise the discretion contemplated by *Barden*. *See id.* Among other things, the Program Statement provided that, when the BOP received a request for a *nunc pro tunc* designation, the appropriate BOP official would "send a letter to the sentencing court ... inquiring whether the court has any objections." PS 5160.05 § 9(b)(4) (c). If the sentencing court expressed an opinion, the BOP would consider that opinion along with the other factors listed in 18 U.S.C. § 3621(b), above. The BOP's determination of whether to grant a *nunc pro tunc* designation and effectively to allow a defendant's federal sentence to run concurrently with a state sentence would then be subject to review by the courts, for abuse of discretion. *Mitchell*, 2011 WL 5075117 at *3 (citing *Barden* and *McCarthy*). [7]

[7]  As far as the Court is aware, the BOP has not announced any changes to PS 5160.05 or its application after *Setser*, *see* http://www.bop.gov/policy/progstat/5160_005.pdf, although, for the reasons explained below, the continued viability of this Program Statement is unclear.

## 2. The Scope of the BOP's Authority After *Setser*

The Supreme Court in *Setser* was called upon to construe 18 U.S.C. § 3584(a), which plainly authorizes federal courts to impose a federal sentence either concurrent with or consecutive to an already-existing state sentence, [8] but which both the petitioner (and the government), in *Setser*, had argued was not broad enough to authorize a federal court to make a concurrency determination regarding a state sentence that was not yet imposed. *See Setser*, 132 S. Ct. at 1467-68. The Court held that Section 3584(a) simply "does not cover" the situation where a state sentence is merely anticipated at the time of federal sentencing. *Id.* at 1467. Nonetheless, the Court found that, prior to the enactment of Section 3584, federal courts had the authority to make concurrency determinations in such situations, and that nothing in Section 3584 repealed that "pre-existing authority." *Id.*, at 1469. Thus, the Supreme Court definitively rejected the position that "the concurrent-vs.-consecutive decision" in circumstances like Petitioner's "is committed exclusively to the [BOP]." *Id.*, at 1468. The Court offered conflicting indications, however, as

Case 9:21-cv-01219-DNH-TWD    Document 11    Filed 10/21/24    Page 30 of 45

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2013)

2013 WL 12177171

to whether the BOP retained any non-exclusive discretion to make a concurrency determination where, as here, the sentencing court had not explicitly exercised its authority at the time of sentencing and instead was silent.

8    Section 3584(a) provides:

If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant *who is already subject to an undischarged term of imprisonment*, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

18 U.S.C. § 3584(a) (emphasis added).

**\*6** On the one hand, *Setser* can be read to suggest that, in such a circumstance, the BOP lacks authority to make a *nunc pro time* designation. In this regard, *Setser* emphasizes that, at least in the context of Section 3584(a), the concurrency decision is one "committed to the district court," and explains that, while Section 3621(b) (which, as noted above, allows the BOP to designate the place of confinement) "*is a conferral of authority on the [BOP]*," *id.*, at 1470 (emphasis in original), Section 3621(b) "docs not confer the authority to choose between concurrent and consecutive sentences," *id.* Indeed, the Supreme Court specifically noted that Section 3621(b)'s requirement to consider " 'the resources of the facility contemplated' " "confirm[ed] [the Court's] view that § 3621 is not a sentencing provision, but a place-of-confinement provision." *Id.*, at 1471.

On the other hand, *Setser* appears to accept that the BOP does have the authority to make the concurrency determination in at least some cases. To this effect, while the Supreme Court expressed the view that judges should be "responsible for" concurrency determinations with regard to yet-to-be-imposed state sentences, *see id.*, at 1472 n.5, the Court also recognized there are "some situations" where "a district court may have inadequate information and may forbear," *id.*, at 1473 n.6. This may have signaled that, in such situations, the determination may appropriately be left to the discretion of the BOP. *Setser* also accepted that the BOP may exercise its independent discretion in circumstances where "late-onset facts materially alter a prisoner's position and make it difficult, or even impossible, to implement his sentence." *Id.*, at 1473. Finally, the Court noted that it is the BOP "which ultimately has to determine how long the District Court's sentence authorizes it to continue" an inmate's confinement, *id.*, and pointed out that the petitioner in the case before it was "free to urge the Bureau" to apply concurrency, if he believed that would best effectuate the sentencing court's judgment, *id.*

*Setser* thus leaves open two possibilities where, in a case like Petitioner's, the sentencing court did not explicitly exercise its authority to order consecutive or concurrent sentences: First, where the sentencing court was silent, it may be that the BOP's discretion should be guided not by the factors set out in Section 3621 (b), but solely by its analysis of what the sentence "authorize[d]," 132 S. Ct. at 1473, or the district court intended. Second, in such a case, it may be that the BOP would still have the (non-exclusive) discretion to make the concurrency determination independently, based on the Section 3621(b) factors, as previously recognized by *Barden* and other pre-*Setser* cases.

The question of which of these possibilities is correct appears to be one of first impression in this circuit. *See Henriquez v. United States*, No. 12 Civ. 5590 (AKH), 2012 WL 6739422 (S.D.N.Y. Dec. 27, 2012) (citing *Setser*, but for proposition that prisoner must exhaust administrative remedies before bringing *habeas* petition; question of BOP's continued authority apparently not raised before court); *Mitchell v. Lara*, No. 11 Civ. 1540 (LBS), 2012 WL 1080290 (S.D.N.Y. Apr. 2, 2012) (analyzing BOP's determination under § 3621(b) for abuse of discretion without reference to *Setser*; issued days after *Setser* decided).[9] For the reasons discussed below, however, the Court need not resolve the issue in this case, as, in either event, Petitioner's claims must fail.

9    Other courts to have addressed the question are divided. *Compare Loveless v. Ziegler*, No. 5:11-cv-00991, 2012 WL 3614315, at \*4 (S.D.W. Va. Aug. 21, 2012) ("The *Setser* decision however, made clear that the BOP's nunc pro tunc decision-making authority under § 3621 (b) is not an exercise of sentencing authority [and] cast no doubt on the propriety

Case 9:21-cv-01219-DNH-TWD   Document 11   Filed 10/21/24   Page 31 of 45

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2013)
2013 WL 12177171

of the BOP making independent determinations of whether to retroactively designate a state facility for service of a prisoner's federal sentence pursuant to the five factors listed in § 3621(b).”), *with Elwell v. Fisher*, Civ. No. 11-2595 (RHK/LIB), 2012 WL 2277850, at *5 (D. Minn. Apr. 25, 2012) (“The BOP's authority to make its own determination of whether a federal sentence is concurrent, by means of a nunc pro tunc designation, has been called into question by the United States Supreme Court's decision in *Setser v. U.S.*, 132 S. Ct. 1463 (2012).”).

## II. PETITIONER'S CLAIMS

 **\*7** Petitioner raises several claims, all with the goal of obtaining an order from this Court directing that his federal sentence should run concurrently with his state sentence. Certain of Petitioner's claims, liberally construed, challenge either the BOP's initial construction of the governing law regarding the commencement date of his federal sentence, or the BOP's constitutional authority to make the determination as to how his federal sentence should run. In the alternative, Petitioner also claims that, in his case, the BOP abused its discretion in denying his request for a *nunc pro tunc* designation, by failing to consider all relevant factors and/or by relying on information that, in Petitioner's view, should not have been considered. This Court will address each of these claims, in turn.

### A. Petitioner's Claim That, Under Governing Law, His Federal Sentence Automatically Began To Run in 1995

As a threshold matter, Petitioner argues that his federal sentence cannot, by its own terms, be read to run consecutively with any state sentence. In this regard, Petitioner argues that the federal sentencing judge did not direct his sentences to run consecutively, and could not have done so under Section 3584(a), referenced above. (Am. Pet., at 6; Traverse, at 14.) Instead, Petitioner contends either that the court ordered his federal sentence to being immediately, upon its imposition (Am. Pet., at 6), or that, if the sentencing judge is found to have been silent on this point, the court's silence must be construed to create a presumption of concurrent sentences (Traverse, at 16). Petitioner additionally argues that, as he was not yet subject to a state sentence at the time he was first taken into federal custody by the United States Marshals, his federal sentence must be considered to have started as of his “first appearance in federal court.” (Am. Pet., at 6.) These arguments have no merit.

First, as explained above, Petitioner's appearance in federal court pursuant to a writ of *habeas corpus ad prosequendum* did not create federal primary jurisdiction. The fact that, at the time, Petitioner may not yet have been serving or subject to a state sentence (*see* Traverse at 2 (asserting that his “parole hold had expired before he was sentence[d] in the District Court”)) is irrelevant, as Petitioner was, in any event, being held by the state on pending state charges, and the state had never relinquished its primary jurisdiction.

Second, Petitioner's arguments based on the language of the sentencing court's judgment are misplaced. Petitioner quotes the sentencing court's judgment as staling that the “defendant is hereby committed to the custody of the [BOP]” and “is remanded to the United States Marshal.” (Am. Pet., at 6.) Petitioner argues that, when this language is considered together with the fact that the sentencing judge did not specify any other date for the commencement of his sentence, the only conclusion that can be drawn is that the court expected his sentence to begin right away. (*See id.*). This argument ignores the rule that a prisoner “borrowed” from state authorities to face charges in federal court is not, as noted above, under primary federal custody. *See, e.g., Rosemond*, 137 F. Supp. 2d at 272-73; *see also Delima v. United States*, 213 F.3d 625 (table), 2000 WL 534248, at *1 (summary order) (2d Cir. 2000) (“When a federal court obtains a prisoner's presence for court proceedings pursuant to a writ of *habeas corpus ad prosequendum*, that individual is only on ‘loan’ from the state and must be returned to the state's custody at the conclusion of the proceedings.”). Indeed, in the face of similar arguments, at least one court in this circuit has held that the USMS “acted properly” in returning a prisoner to state custody to face pending state charges, notwithstanding that the sentence “committed” the prisoner to BOP custody. *Delima v. United States*, 41 F. Supp. 2d 359, 362-63 (E.D.N.Y. 1999) (where federal sentencing court had directed that the defendant be “committed to” BOP custody, this language “was not meant to override the requirement that the marshal return petitioner to the state upon disposition of the federal case”), *aff'd*, 213 F.3d 625 (table), 2000 WL 534248 (summary order) (2d Cir. 2000).

Case 9:21-cv-01219-DNH-TWD    Document 11    Filed 10/21/24    Page 32 of 45

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2013)

2013 WL 12177171

**\*8** Third, there is no indication in the record that, at the time of sentencing, the sentencing judge affirmatively directed Petitioner's federal sentence to run concurrently with any later-imposed state sentence.

Fourth, the federal sentencing judge's silence as to whether Petitioner's federal sentence should run concurrently with, or consecutively to, any potential state sentence neither suggests that the court intended the sentences to be concurrent, nor creates a presumption of concurrency, if any intent by the sentencing court can be gleaned from its silence, it is most likely that the court intended Petitioner's sentences to run consecutively. On this point, the sentencing court was aware that Petitioner was facing pending state charges (arising from wholly different conduct than that giving rise to the federal charge) and was still in primary state custody. (*See* Johnson Decl., Ex. A (Pre-Sentence Investigation Report, noting pending state charges and that Petitioner was at the time in state custody).) By operation of the ordinary rules of primary jurisdiction, then, Petitioner could have been expected to serve his state sentence in full before beginning his federal prison term. Thus, while the sentencing court cannot be said to have explicitly chosen consecutive terms, the most reasonable interpretation of the court's silence is that the court understood that consecutive terms would be the default, either under Section 3584(a) [10] or under the laws of primary jurisdiction. *See, e.g., Rodriguez v. Pitzer*, 76 Fed.Appx. 519, 520 (5th Cir. 2003) ("[The petitioner]'s federal sentence provided no evidence that the sentencing (district) court intended that it be served concurrently with his pending state sentence. Because [the petitioner]'s presentence investigation report identified the pending state charges, we can assume that the sentencing court was aware of [the petitioner]'s pending state proceeding.... Given the absence of such intent, the BOP was well within its discretion to deny [the petitioner's]'s request for a nunc pro tunc designation.").

[10]   *See supra* at n.8; *see also U.S. v. Randolph*, 80 Fed.Appx. 190, 195 (3d Cir. 2003) (holding that § 3584(a) gave rise to a presumption of consecutive sentences in cases involving not-yet-imposed state sentences). Although *Randolph* was decided after Petitioner's sentencing, and before *Setser* (which calls its reasoning into doubt), it arguably still sheds some light on the intent of the sentencing court here, to the extent the decision memorialized the then-existing state of the law in the Third Circuit, where Petitioner was sentenced.

In support of his view that a presumption of *concurrency* should apply in his case, Petitioner relies heavily on a decision issued by the Eastern District of New York, more than 20 years ago, in *Germaine v. United States*, 760 F. Supp. 41 (E.D.N.Y. 1991). (*See* Traverse, at 16.) In *Germaine*, the petitioner, like Petitioner here, was in primary state custody during the pendency of both state and federal charges, was sentenced on the federal charges first, but remained in state custody through and after his state sentencing, and later sought a determination that his federal sentence should run concurrently with the state sentence rather than commence only after he was released from state custody. The reviewing court found for the petitioner, "[b]ased on the peculiar facts of [the] case ... and fundamental principles of equity," and ordered that the petitioner be granted "credit" towards his federal sentence for his time in state custody. *Id.*, at 42-43. Noting that, in general, it is "equitable to presume that a federal sentence is concurrent with a pending state sentence, when a sentencing judge fails to consider the pending state sentence," *id.*, at 43, the court also determined that, in the particular case before it, the sentencing court had, in fact, intended the federal sentence to commence from the date of sentencing, *id.*, at 42.

**\*9** Unlike in *Germaine*, though, there is no basis for this Court to make any determination that the federal sentencing court in Petitioner's case had intended Petitioner's sentences to run concurrently. Not only are there reasons to assume the opposite, as noted above, but when the question was later put to the sentencing court directly by the BOP, the court expressed its opposition to concurrent sentencing in Petitioner's case. More fundamentally, *Germaine* appears to be an outlier, at best, limited to its "peculiar facts," *id.*, at 42, including the fact that the Petitioner in that case was convicted on federal and state charges stemming from the same set of facts, after he had been "arrested by a joint task force of federal and state agents," *id.*, at 41. Moreover, in finding a presumption of concurrency, *Germaine* appears to stand alone in the case law. Petitioner cannot, therefore, rely on *Germaine* to turn the sentencing court's silence in his case into a presumptively concurrent sentence.

Finally, if, by its silence, the sentencing court actually meant for Petitioner's sentences to run consecutively, then *Setser* makes clear that the court had the authority to make that determination, *see* 132 S. Ct. at 1467, and any argument by Petitioner challenging such authority must be rejected.

Case 9:21-cv-01219-DNH-TWD    Document 11    Filed 10/21/24    Page 33 of 45
Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2013)
2013 WL 12177171

For all of these reasons, Petitioner's sentence cannot be found to have commenced automatically in 1995, by operation of any statute, default presumption, or order of the sentencing court.

### B. Petitioner's Claim That the BOP's Determination Was Unconstitutional

Petitioner appears to raise numerous constitutional challenges to the BOP's authority to deny his request for concurrency. Among other things, Petitioner argues that, to the extent the BOP, and not the sentencing court, made the concurrency decision in his case, the BOP's decision violated the constitutional requirement of separation of powers. Petitioner also appears to argue that, to the extent the sentencing court made the decision in response to the BOP's inquiry, his due-process rights were violated, as he was not afforded an opportunity to be heard by the court, prior to its stating its view on concurrency. Liberally construed, the Amended Petition may also be read to raise double jeopardy and Eighth Amendment challenges to Petitioner's concurrent sentences. Petitioner cannot prevail on any of these constitutional challenges.

### 1. Separation-of-Powers Challenge

Petitioner argues that any delegation of authority to the BOP to determine whether federal and state sentences should run concurrently or consecutively raises separation-of-powers concerns. (Am. Pet., at 10-12; Traverse, at 8. [11] ) Petitioner's argument on this point consists mainly of unattributed, extensive quotations from two cases, *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 76 (2d Cir. 2005) (quoted without attribution in Pet., at 8) and *Reynolds v. Thomas*, 603 F.3d 1144, 1153-54 (9th Cir. 2010) (Fletcher, J., concurring) (quoted extensively, without attribution, in Petitioner's Traverse, at 10). Neither of those eases compels the holding Petitioner seeks. [12]

[11]   *See also* Traverse, at 12 (suggesting, seemingly in the context of his separation-of-powers argument, that the BOP has a "conflict[ ] of interest" in determining when sentences should run because, in Petitioner's view, it is in the agency's interest to have more prisoners incarcerated for longer periods of time).

[12]   Respondent never explicitly addresses Petitioner's separation-of-powers argument, but does "specifically den[y]," in a footnote, any allegation that Respondent has not addressed. (Return, at 1 n.1.)

In *Abdul-Malik*, the Second Circuit confronted a habeas petition from a petitioner who, like Petitioner here, had been in state custody on pending charges, was removed to federal custody on a writ of *habeas corpus ad prosequendum*, was convicted and sentenced for a federal offense, was then returned to state custody and convicted and sentenced for state crimes, and was denied a *nunc pro tunc* designation by the BOP. *Abdul-Malik*, 403 F.3d at 73-74. The sentencing court had been silent on concurrency, which, the Second Circuit noted, may have been "just as well," *id.,* at 74, given the circuit split existing at the time (later resolved by *Setser*) as to whether the court would have had authority to order concurrency at all, in the situation presented. In light of the sentencing court's silence, the concurrency determination was made by the BOP. *Id.,* at 75-76. Although the Second Circuit noted that "[a] separation of powers issue arises when the same branch of government that prosecutes federal prisoners determines concurrency in lieu of the judge" and "respectfully invite[d] congressional consideration" of the underlying statutes due to the separation-of-powers issue, [13] it held that the petitioner "lack[ed] any ground for relief under current law." 403 F.3d at 73, 76. In other words, the Second Circuit found that the separation-of-powers issue was troubling enough to call to Congress' attention, but that it did not create a violation of then "current law." *Id.* In the absence of any change in the law, *Abdul-Malik* thus forecloses Petitioner's claim.

[13]   *See also Fegans v. United States*, 506 F.3d 1101, 1104 (8th Cir. 2007) ("[W]e agree with the Second Circuit that Congress should examine the issue because it implicates important federalism and separation of powers concerns.").

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2013)

2013 WL 12177171

**\*10**  The portion of *Reynolds* quoted by Petitioner also affords little support for his separation-of-powers argument. First, Petitioner's quotations from this Ninth Circuit decision are from a concurrence, 603 F.3d at 1161, not the majority opinion (which never reached the separation-of-powers question), and, second, in that concurrence, Judge Fletcher ultimately concluded that the BOP's actions in the ease before the court did *not* violate the separation-of-powers principle. *Id.* at 1161. In fact, the judge wrote:

> In this case, the BOP asked the federal sentencing judge whether he wanted Reynolds's sentence to be concurrent with or consecutive to the state sentences. When the federal judge declined to slate a preference, the BOP used a permissible rule of construction, based on § 3584(a), to conclude that the federal judge's silence meant that Reynolds's sentence should be consecutive. (Later, following another *nunc pro tunc* request by Reynolds, the BOP again solicited the federal judge's view. The judge expressed that he had "no objection," and the BOP granted the request.) In this circumstance, I would conclude that the BOP's earlier denial of Reynolds's request for a *nunc pro tunc* designation was based on a permissible interpretation of what the federal sentencing judge intended, and that its denial thus did not violate separation of powers.

*Id.*

In *Setser*, the Supreme Court did express its preference for the sentencing court, and *not* the BOP, to make the concurrency determination in a case like this one, *see* 132 S. Ct. at 1471 (expressing the "desideratum that sentencing not be left to employees of the same Department of Justice that conducts the prosecution"), but the Court did not expressly find that the BOP, as an agency of the Executive branch, would never be permitted to make *nunc pro tunc* concurrency determinations. Further, there is no basis for finding that the BOP actually violated the separation of powers in this particular ease. As discussed above, the sentencing court's silence, if anything, suggested that the court's intention was for Petitioner's sentences to run consecutively, and, to the extent that intent was not clear, the BOP, as it did in *Reynolds*, asked the court for its position on Petitioner's request for a *nunc pro tunc* designation, and the court then unequivocally expressed the position that Petitioner's sentences should be consecutive. Accordingly, even if the BOP lacked the authority to make the determination in Petitioner's case, its denial of Petitioner's request for a *nunc pro tunc* designation was apparently consistent with the intent of the sentencing court. Under these circumstances, Petitioner has not raised a cognizable separation-of-powers claim.

## 2. <u>Due-Process Challenge</u>

Construing Petitioner's due-process arguments in the light most favorable to him, this Court understands Petitioner to be claiming that his constitutional due-process rights were violated by (1) the out-of-court procedure utilized by the BOP to decide his request for a *nunc pro tunc* designation, and (2) the BOP's reliance on communications with the sentencing court that were *ex parte* and afforded Petitioner no opportunity to object. (*See* Am. Pet., at 4-5, 8; Traverse, at 13-14.) [14]

[14]    In a handwritten addendum to his typed Amended Petition, Petitioner states that he "also request[s] to challenge the decision rendered by the Court." (Am. Pet., at 9.) The meaning of this request is unclear, but its seems most likely that Petitioner is still seeking an opportunity to be heard by the sentencing court.

**\*11**  As to the first of these points, the Second Circuit has expressly approved the procedure used by the BOP to decide prisoner requests for *nunc pro tunc* designations. *See*, *e.g.*, *McCarthy*, 146 F.3d 118 (adopting *Barden* holding that BOP has discretion to evaluate, independently, requests for *nunc pro tunc* designations); *see also Delima*, 2000 WL 534248 at \*1 (rejecting due-process challenge to USMS's return of Petitioner to state custody after federal sentencing, and noting availability of various avenues to seek concurrent sentencing, including, "[m]ost importantly ... the right *nunc pro tunc*[ ]to petition the [BOP] to designate the facility in which he served his state sentence as the site of his federal sentence"). Nothing in *Setser* called this

Case 9:21-cv-01219-DNH-TWD   Document 11   Filed 10/21/24   Page 35 of 45
Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2013)
2013 WL 12177171

procedure itself into question, and, in fact, as mentioned above, the Supreme Court expressly noted that the petitioner in that case "was free to urge the [BOP]" to make a determination in his favor, crediting, toward his federal sentence, time he had served in state custody. *Setser*, 132 S. Ct. at 1473.

As to Petitioner's second point, Petitioner argues—seemingly with reference to the sentencing court's expressed objection to a *nunc pro tunc* designation in his case—that due process required that he "(1) 'not be sentenced based on material false information,' (2) 'not be sentenced based on a misapprehension of the fact[s],' and (3) 'be given notice and an opportunity to contest the facts upon which sentencing authority relied in imposing the sentence.' " (Traverse, at 13-14 (unattributed quotations; *but see Torres v. United States*, 140 F.3d 392, 404 (2d Cir. 1998) (giving similar list of three due-process requirements in sentencing)).)

Petitioner, however, has not pointed to any "material false information" that was before the sentencing court at any time, nor has he shown that the sentencing court "misapprehended" any facts in stating its objection to concurrency in Petitioner's case. As clarified by *Setser*, a sentencing court has the authority to determine concurrency at the time of a defendant's sentencing. If the court docs not do so at that time, then it is doubtful that there would be any constitutional bar to the BOP seeking, later, to clarify the court's position on the matter, based on the same facts that would have been available to the court at the time of sentencing. Petitioner seems to be arguing that *new* facts—specifically relating to his record in prison and purported rehabilitation—should have been placed before the sentencing court, and that, in the absence of such information, the court would not have understood the *true* facts that should have influenced its response to the BOP. This argument is misplaced, as the question that was properly before the BOP was how best to effectuate the sentence that the court intended to imposed, not whether that sentence should have been modified. [15]

[15]   Once imposed, a federal prison sentence cannot be modified, except by direction of the courts, and then only in three limited circumstances. 18 U.S.C. § 3582(c)(2). Petitioner has already sought, and received, a modification under one of these exceptions, based on a change in the sentencing guidelines. *See Cruz*, 2008 WL 4671793 (granting modification under § 3582(c)(2)). Petitioner could also conceivably invoke the exception for "extraordinary and compelling circumstances," but a modification based on such circumstances would only be possible "upon motion of the Director of the [BOP]." 18 U.S.C. § 3582(c)(1)(A). Petitioner may request that the Director of the BOP move the sentencing court for a modification on his behalf; if that request is denied, he would need to exhaust his administrative remedies before raising a claim here. *See Porges v. Zickefoose*, No. 3:08-CV-785 (RNC), 2008 WL 4596640 (D. Conn. Oct. 15, 2008) (noting petitioner's request for release under § 3582(c), but ultimately denying petition for failure to exhaust administrative remedies). If Petitioner does make and exhaust such a request, but does not receive the relief he seeks, there is "some limited authority for the proposition that a district court might recommend that the BOP move for a sentence modification." *Lucas v. United States*, No. 11-CV-2229 (CBA), 2011 WL 4056060, at *2 (E.D.N.Y. Sept. 12, 2011). The permissibility or advisability of such a recommendation is not currently before this Court.

**\*12**   Further, Petitioner has not shown that he was denied the opportunity to contest the facts that the BOP placed before the sentencing court. At sentencing, Petitioner had the opportunity to contest the description of the pending state charges, as referenced in the presentence investigative report (Johnson Decl., Ex. A), and their relevance. The BOP's later *ex parte* letter to the sentencing court contained only one new "fact"—the length of the sentence Petitioner eventually received (*see* Johnson Decl., Ex. I)—a fact that Petitioner concedes was correct. Thus, Petitioner has not shown that any new facts placed before the sentencing court are facts that he would have contested.

Overall, Petitioner has not demonstrated that the process used by the BOP to determine his request for a *nunc pro tunc* designation deprived him of due process.

### 3. Double Jeopardy Challenge

Petitioner notes that the state attempted-murder charges that were pending against him at the time of his federal sentence were considered by the federal sentencing court, under the federal Sentencing Guidelines, as part of his past criminal history. (*See* Traverse, at 18 (noting that, in part because of his state charges, the federal court imposed a sentence under Guidelines "category four").) Petitioner then argues that the BOP should not have considered his past criminal history again, when determining whether to issue a *nunc pro tunc* designation. (*Id.* at 19-20.) Construed liberally, Petitioner's "disagree[ment] with the double counting of information relied upon to enhance sentence and to order sentences to be subject to consecutive terms" (Traverse, at 20) may be an attempt to raise a challenge under the Double Jeopardy Clause of the Constitution, *see* U.S. Const., amend. V. Petitioner, however, has offered no legal support for such an argument, and this type of challenge to the timing of his sentence would appear to be misplaced, given that the Supreme Court has held that imposition of enhanced sentences based on criminal history or recidivism is not "either a new jeopardy or additional penalty for the earlier crimes, but instead [is] a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Witte v. United States*, 515 U.S. 389, 400 (1995) (internal quotations and citation omitted). [16]

[16]    Petitioner also argues that Section 5G1.3 of the federal Sentencing Guidelines "operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." (Traverse, at 17-18 (quoting *Witte*, 515 U.S. at 405).) That section, however, applies only to a federal court making sentencing determinations in the face of an already existing state sentence. *See* USSG § 5G1.3 (1995).

#### 4. Eighth Amendment Challenge

Petitioner also contends that the decision to ran his sentences consecutively violated his purported Eighth Amendment right against "excessive imprisonment." (Traverse, at 20.) As the Eighth Amendment contains no guarantee against "excessive imprisonment" as such, Petitioner is presumably arguing that the total duration of his consecutive terms would be so disproportionate to his crimes as to constitute "cruel and unusual punishment." *See Graham v. Florida*, 130 S.Ct. 2011, 2021 (2010) (reviewing Supreme Court case law addressing "proportionality" of length of imprisonment under Eighth Amendment). Establishing such a constitutional violation is "difficult," as the Eighth Amendment contains only a " 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime.' " *Id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997 (1991)).

**\*13**  Petitioner argues that his total expected period of incarceration is excessive for the underlying state and federal crimes. (Traverse, at 20.) If, however, the Court considers the combined length of his consecutive sentences—for attempted murder and drug charges—in light of the totality and severity of those charges. Petitioner cannot possibly show that a combined sentence of 526 months (Traverse, at 20) for those charges could be considered "grossly disproportionate" to the crimes. *See Graham*, 130 S.Ct. at 2021 (reviewing sentences held by Supreme Court not to be unconstitutionally disproportionate, including "25 years to life for the theft of a few golf clubs," "life with the possibility of parole for a defendant's third nonviolent felony, the crime of obtaining money by false pretenses," and "40 years for possession of marijuana with intent to distribute and distribution of marijuana"). [17]

[17]    Petitioner also complains that the federal detainer lodged against him has denied him "certain opportunities," including the ability to participate in certain rehabilitation programs or to be transferred to lower-classification facilities. (Am. Pet., at 8-9; *see also* Traverse, at 6-7, 20-21.) Petitioner does not argue that his current conditions are in and of themselves unconstitutional under the Eighth Amendment, and this Court is unaware of any authority supporting Petitioner's apparent suggestion that the BOP should grant a *nunc pro tunc* designation merely because it might improve Petitioner's conditions in state prison.

#### C. Petitioner's Claim That the BOP Abused Its Discretion in Denying His Request for a *Nunc Pro Tunc* Designation

2013 WL 12177171

Apart from his challenge to the BOP's authority to make the concurrency determination in his case, and his other constitutional challenges, Petitioner claims, in the alternative, that the BOP's denial of his request for a *nunc pro tunc* designation constituted an abuse of discretion because the BOP did not properly consider all of the factors set out in 18 U.S.C. § 3621(b). Petitioner may also be seeking to claim that the BOP abused its discretion by relying on an erroneous interpretation of 18 U.S.C. § 3584—specifically, the interpretation, rejected by the Second Circuit and implicitly rejected by the Supreme Court, that a sentencing judge's silence in a situation like Petitioner's creates a presumption, under that statute, that federal and state sentences should run consecutively. *See McCarthy*, 146 F.3d at 121-22 (holding that "the presumption that the terms of imprisonment imposed at different times run consecutively does not apply" to a defendant who was "[not] already subject to his state sentence when his federal sentence was imposed"); *see also Setser*, 132 S.Ct. at 1470 (noting in dicta that "the last two sentences of § 3584(a)" create presumption from court's silence in "two common situations," neither of which involves federal court issuing sentence before state court).

### 1. The Requirement That All Five of the Section 3621 Factors Be Considered

To the extent that, in the wake of *Setser*, the BOP may still be found to have the authority to grant a *nunc pro tunc* designation to a prisoner seeking to have his state and federal sentences run concurrently, that authority, as discussed above, would derive from the BOP's more general authority to designate the place of federal confinement under 18 U.S.C. § 3621(b). That section provides, in relevant part, that the BOP "may designate any available penal or correctional facility ... that the Bureau determines to be appropriate and suitable, considering [five enumerated factors]." *Id.* The Second Circuit has held, in a different context, that the five factors are "mandatory but non-exclusive." *Levine v. Apker*, 455 F.3d 71, 84 (2d Cir. 2006) (rejecting BOP contention that it was not required to consider all § 3621(b) factors in determining prisoners' suitability for "community corrections centers"). Arguably, then, the BOP would abuse its discretion, by exceeding its statutory authority, if it were to designate a facility of incarceration without considering all five factors. *See id.*

**\*14** In claiming that the BOP abused its discretion in denying his request for a *nunc pro tunc*, designation, Petitioner principally argues that the BOP failed to take into account all evidence relevant to the third enumerated factor in Section 3621(b)—*i.e.*, "the history and circumstances" of the prisoner. (*See* Am. Pet., at 7; Traverse, at 5-8; *see also* 18 U.S.C. § 3621(b).) More specifically, Petitioner argues that, in connection with this factor, the BOP should have considered his rehabilitation and positive accomplishments while in prison, but failed to do so. (*See* Traverse, at 5-9 ("Petitioner avers, he is not the same person" as when convicted; listing accomplishments). [18] ) Petitioner also argues that the BOP improperly considered criminal conduct that occurred when Petitioner was a minor, and effectively "double counted" his state offenses by using them as a reason for consecutive service of his sentences, after the same offenses had already been used by the sentencing court to enhance Petitioner's federal sentence. (*See* Am. Pet., at 6-7; Traverse at 17-19.) Essentially, Petitioner is arguing that, in making its determination, the BOP should have considered his rehabilitation while in state prison, but should not have considered his criminal history. This argument is not persuasive.

[18]     Petitioner attaches, to his Amended Petition and Traverse, voluminous records of those accomplishments. (*See, e.g.*, Am. Pet., Ex. A (certificate of completion for 24 hours of HIV/AIDS education and peer counseling); Am. Pet., Ex. B (certificate of completion for aggression replacement training program); Am. Pet., Ex. C (certificate of completion for 30 weeks of Narcotics Anonymous Group); Am. Pet. Ex. D (certificate of completion for basic course in nonviolent conflict resolution); Am. Pet., Ex. F (High School Equivalency Diploma and transcript); Am. Pet., Ex. G (certificate of achievement for summer league basketball); Am. Pet., Ex. I ("Employability Profile Report of Vocational Training"); *see also* Traverse, Ex. 20 (American Bible Academy certificates and grade reports); Ex. 22 (Occupational Training Certificate in Custodial Maintenance); Ex. 24 (various other certificates for participation in and completion of prison programs).)

The BOP's letter to Petitioner, denying his request for a *nunc pro tunc* designation, recites that the BOP did consider his "history and characteristics," and a worksheet that the BOP has produced reflects this, as well. [19] These documents show that the BOP

2013 WL 12177171

found that Petitioner's criminal history, which it set out, favored consecutive sentencing. (*See* Traverse, Ex. 9, at 1-2.) The plain meaning of "history" permitted the BOP to consider those criminal incidents that Petitioner claims it should have ignored, and, in any case, the BOP was entitled to consider factors in addition to the listed five. *Levine*, 455 F.3d at 84. Petitioner is thus incorrect that the BOP considered information that it should have ignored.

[19]     *See* Traverse, Ex. 9, at 1 (stating that the BOP had "determined that the relevant factors under the statute are (2), (3), and (4)"); *see also* Return, at 3-4 & n.2; Johnson Decl., Ex K (BOP worksheet stating decision to deny Petitioner's request was "based upon factors 2,3, and 4"). The BOP apparently considered the remaining two factors—(1) (the "resources of the facility contemplated") and (5) ("any pertinent policy statement ...")—only enough to conclude that they were irrelevant under the circumstances.

Furthermore, although information pertaining to his alleged rehabilitation was arguably relevant to Petitioner's "characteristics," Petitioner points to no authority requiring the BOP to consider such post-incarceration information. Indeed, given that § 3621(b) is primarily concerned with place-of-imprisonment determinations, which are generally made at the beginning of a term of incarceration, it makes little sense to say that the statutory factors require consideration of post-incarceration events. *See, e.g.*, *Mitchell*, 2011 WL 5075117, at *6 ("18 U.S.C. § 3621(b) requires prison officials to consider features of the prisoner's case that pre-exist his incarceration"). [20]

[20]     To the extent Petitioner is arguing that the BOP must consider his rehabilitation evidence as evidence of "inmate disciplinary history" and "institutional adjustment" under Program Statement 5160.05, he is incorrect. The Program Statement does not require the BOP to consider those factors in cases, such as this one, where the sentencing Court responds to the BOP's inquiries regarding concurrency.

## 2. The BOP's Incorrect Interpretation of 18 U.S.C. § 3584

**\*15**  In addition to noting its analysis of the relevant statutory factors under Section 3621(b), the BOP's letter to Petitioner denying his request also included this sentence: "Pursuant to Title 18 U.S.C. § 3584(a), [m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." (Traverse, Ex. 9, at 2.) The BOP then concluded its letter by stating that, "[b]ased on the foregoing" (*id.*), Petitioner should not receive a *nunc pro tunc* designation.

As discussed above, the Supreme Court, in *Setser*, held that Section 3584 "docs not cover" the situation presented by Petitioner's case, where the state sentence had not yet been imposed at the time of the federal sentencing. *Setser*, 132 S. Ct. at 1467. Moreover, prior to *Setser*, the Second Circuit had held that Section 3584 did not create any default sentencing rule in such a situation. *See McCarthy*, 146 F.3d at 121-22. A BOP determination based on a contrary interpretation of Section 3584(a)—as opposed to a determination based on the factors set out in Section 3621(b)—might therefore constitute an abuse of discretion. *See id.*, at 122 (noting that BOP "was therefore incorrect to rely on § 3584(a) as grounds for denying defendant's request"); *see also id.* at 123 ("Where § 3584(a) applies, of course, the Bureau must follow the presumptions set out therein. In a case such as this, however, where § 3584(a) does not apply, the Bureau should exercise its discretion under § 3621(b) to review petitioner's request for *nunc pro tunc* designation.").

Nonetheless, the BOP's apparently erroneous reading of Section 3584(a) in this case was immaterial to the BOP's determination, as the relevant factors under Section 3621 (b) in any event weighed in favor of consecutive sentencing. (*See* Traverse, Ex. 9, at 2.) Accordingly, as the denial of Petitioner's request for a *nunc pro tunc* designation was both consistent with the intent of the sentencing court *and* reasonable in light of the five factors set forth in Section 362(b), there is no basis for the Court to recommend to the BOP that it revisit that determination.

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend that Petitioner's Petition for a writ of habeas corpus be dismissed.

"[N]o certificate of appealability is necessary" for an appeal from the denial of a petition for habeas relief brought under 28 U.S.C. § 2241. *Jennings v. Schult*, 377 Fed.Appx. 97 (2d Cir. 2010) (Summary Order).

**\*16**  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (adding three days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein, United States Courthouse, 500 Pearl Street, Room 1010, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Stein. FAILURE TO FILE OBJECTIONS WITHIN 14 DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983). If Petitioner does not have access to cases cited herein that are reported on Westlaw, he may request copies from Respondent's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the pro se litigant with copies of such unpublished eases and other authorities as are cited in a decision of the Court and were not previously cited by any party.").

## All Citations

Not Reported in Fed. Supp., 2013 WL 12177171

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2014)

2014 WL 12648510

2014 WL 12648510

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

David CRUZ, Petitioner,

v.

BUREAU OF PRISONS, Eric Pfisterer, United States Attorney, James Walsh, Superintendent, Respondents.

Derrick Cruz, Petitioner,

v.

Warden Jordan Hollingsworth, Respondent.

10 Civ. 5460 (SHS)

|

14 Civ. 1328 (SHS)

|

Signed 03/24/2014

**Attorneys and Law Firms**

David Cruz, Fort DIX, NJ, pro se.

Carina Hyatt Schoenberger, Ellen Melissa London, U.S. Attorney's Office, SDNY, New York, NY, for Respondents.

ORDER

Sidney H. Stein, U.S.District Judge.

**\*1** David Cruz [1] has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the Federal Bureau of Prisons (BOP)'s determination that his state and federal sentences shall run consecutively. (*See* Amended Pet. dated Sept. 28, 2010, Dkt. No. 4.) [2] On March 22, 2013, Magistrate Judge Debra Freeman filed a Report and Recommendation, recommending that this Court deny the petition. (Dkt. No. 18.) In response, petitioner moved to "withdraw ... or amend" his petition so that he could add "new claims," (Pet.'s Mot. to Amend, Dkt. No. 19), a motion that respondents opposed (Resps.' Mem. of Law in Opp. to Pet.'s Mot. to Amend Pet. ["Resps.' Opp."], Dkt. No. 22). On reply, petitioner for the first time objected to the Report and Recommendation. (Pet.'s Opp. to Resps.' Mem. of Law in Opp. to Pet.'s Mot. to Amend Pet. ["Pet.'s Reply"], Dkt. No. 27.) Shortly thereafter, petitioner requested an evidentiary hearing to establish "that he was arrested by federal officials on May 10, 1995." (Req. for Evidentiary Hr'g, Dkt. No. 28.) Respondents opposed that request. (Letter dated Sept. 13, 2013, Dkt. No. 29.) More than three months later, petitioner filed another memorandum, again objecting to the Report and Recommendation. (Pet.'s Objections to Report and Recommendation, Dkt. No. 30.) Petitioner subsequently reiterated his request to withdraw or amend his petition. (Letter dated Jan. 27, 2014, Dkt. No. 32.)

---

1      Petitioner has used both the names David Cruz and Derrick Cruz in these actions. *See Cruz v. Hollingsworth,* 2014 WL 47944, at \*1 n.1 (D.N.J. Jan. 7, 2014).

2      Unless otherwise noted, all references to the docket refer to *Cruz v. BOP,* 10-cv-5460 (SHS).

During the time that Judge Freeman's Report and Recommendation was pending before this Court, Cruz filed a separate habeas petition pursuant to 28 U.S.C. § 2241 in the U.S. District Court for the District of New Jersey. *See Cruz v. Hollingsworth,* No. 13-cv-2495-BRK (D.N.J. filed Apr. 18, 2013). That court subsequently determined that petition should be "construed as

a motion to amend the ... habeas petition filed in the Southern District of New York" and accordingly transferred the habeas petition filed in the District of New Jersey to this Court "so that it can be docketed as a motion to amend" the petition that was pending before this Court. *See Cruz,* 2014 WL 47944, at *1-2.

For the reasons that follow, this Court: (1) adopts Magistrate Judge Freeman's Report and Recommendation; (2) denies petitioner's motion for an evidentiary hearing; (3) denies the claims in Cruz's existing petition; and (4) denies in part and grants in part Cruz's motion to amend his petition.

### 1. Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district court must review *de novo* "those portions of the record or specified proposed findings or recommendations to which objection is made." *Id.*; *see* Fed. R. Civ. P. 72(b)(3). As Cruz is pro se, the Court construes Cruz's objections liberally. *See DiPilato v. 7-Eleven, Inc.,* 662 F. Supp. 2d 333, 343 (S.D.N.Y. 2009). Having considered Cruz's objections and reviewed Magistrate Judge Freeman's Report and Recommendation *de novo,* the Court hereby adopts the Report and Recommendation in full and denies the claims in Cruz's current petition.

### 2. Cruz's Request for an Evidentiary Hearing

**\*2** Before the filing of the Report and Recommendation recommending that this Court deny his petition, Cruz had argued that in May 1995 he was arrested by the "York County (State of Pennsylvania) Police" and was "extradited to the State of New York" shortly thereafter. (Pet.'s Traverse & Mem. of Law in Opp. to Resps.' Return & Mem. of Law in Opp. to Writ of Habeas Corpus, Dkt. No. 13, at 1-2.) He further contended that he remained in the custody of New York City officials facing New York state charges until he was transferred to the custody of the U.S. Marshals on a writ of habeas corpus *and prosequendum* in October 1995. *See id.* at 2. Respondents characterized the chronology and location of Cruz's 1995 arrest differently but the parties agreed that Cruz was arrested by local officials on New York state charges and remained in state custody until the U.S. Marshals took custody of him in October 1995. (*See* Resps.' Return & Mem. of Law, Dkt. No. 8, at 1.)

Based on the parties' representations, the Report and Recommendation found that at the time that the U.S. Marshals took custody of Cruz, he was still "being held by [New York] state on pending state charges, and the state had never relinquished its primary jurisdiction." (*See* Report & Recommendation at 15.)

Only after the Report and Recommendation was filed did Cruz request an evidentiary hearing, seeking to establish "that federal authorities arrest[ed] him on May 10, 1995," and that he was "taken into Federal Custody (first)." (*See* Req. for Evidentiary Hr'g at 3.)

A petitioner's unsupported "self-serving and improbable assertions" are not sufficient to merit a hearing. *See Chang v. United States,* 250 F.3d 79, 86 (2d Cir. 2001). Similarly, "if the record refutes [a habeas petitioner's] factual allegations ... a district court is not required to hold an evidentiary hearing." *See Schriro v. Landrigan,* 550 U.S. 465, 474 (2007). The BOP's records confirm Cruz's initial representation to the Court: that he was arrested by York County, Pennsylvania police on May 10, 1995 and transferred to New York City Police Department custody the following week. (*See* Decl. of Patricia Kitka dated Aug. 16, 2013, Attachs. 1-2, Dkt. No. 25-1.) BOP records also confirm the conclusion of the Report and Recommendation that Cruz was continuously in state custody from the time of his arrest on May 10, 1995 until he was transferred to the U.S. Marshals on October 4, 1995. (*See id.,* Attachs. 13-15.)

The only evidence Cruz attaches in support of his request for a hearing on the issue of whether state or federal officials arrested him in fact *undermines* his current assertion regarding the circumstances of his May 10, 1995 arrest. That document is a copy of his indictment on federal drug trafficking and money laundering counts, dated August 16, 1995. The fact that Cruz was not

Case 9:21-cv-01219-DNH-TWD    Document 11    Filed 10/21/24    Page 42 of 45

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2014)

2014 WL 12648510

indicted in federal court until three months after being arrested undercuts his late-raised contention that it was federal authorities who effected his May 10, 1995 arrest.

In short, the testimony Cruz now seeks to elicit directly contradicts both his earlier representations to the Court and the consistent evidence in the record regarding the circumstances of his arrest. In light of that circumstance, and the fact that Cruz did not request a hearing until after the issuance of the magistrate's Report and Recommendation, the Court denies petitioner's request for an evidentiary hearing. *See Schriro,* 550 U.S. at 474; *Chang,* 250 F.3d at 86.

### 3. Cruz's Motion to Amend the Petition

The Court construes Cruz's request to "withdraw ... or amend" his petition (Dkt No. 19) as a motion to amend his 2010 amended petition. [3]

[3]
Although Cruz asserts that he previously sought leave to amend by letter dated April 10, 2012, no copy of that letter—or any letter containing any such request—appears in this Court's records.

Cruz's petition filed in 2013 in the District of New Jersey and transferred to this Court to be docketed as a motion to amend Cruz's petition in this Court, *see Cruz,* 2014 WL 47944, makes no arguments beyond those raised in Cruz's request to "withdraw ... or amend" his petition in this Court. (*See Cruz v. BOP,* 10-cv-5460, Dkt No. 19). The Court therefore does not separately address the points made in Cruz's 2013 petition, construed as a motion to amend, and dismisses that motion as moot. (*Cruz v. Hollingsworth,* 14-cv-1328, Dkt. No. 1.)

**\*3** Specifically, Cruz seeks leave to amend his petition to raise four "new claims": (1) his "arrest by federal officials on May 10, 1995[ ] established primary jurisdiction over petitioner"; (2) his "federal sentence should commence on May 10, 1995 ... when [he] was arrested by ... federal officials"; (3) he is entitled to "[r]elief under *Kayfez[ v. Gasele,* 993 F.2d 1288 (7th Cir. 1993) from] the double credit prohibition of [18] U.S.C. § 3568(b)"; and (4) he is entitled to "295 days of jail credit that [was] removed on January 22, 2013." (Pet.'s Mot. to Amend; Pet.'s Reply.)

A motion to amend a habeas petition is "governed by Federal Rule of Civil Procedure 15(a)." *See Littlejohn v. Artuz,* 271 F.3d 360, 363 (2d Cir. 2001) (per curiam). "[A]lthough Rule 15 requires that leave to amend be 'freely given' district courts nonetheless retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive," *see id.,* or "on grounds of futility," *see Ching v. United States,* 298 F.3d 174, 180 (2d Cir. 2002). In *pro se* cases, a pleading "generally should not be dismissed without granting ... leave to amend at least once, and ... a proposed amended [pleading] should be construed to raise the strongest arguments it suggests." *See Grullon v. City of New Haven,* 720 F.3d 133,140 (2d Cir. 2013).

Respondents oppose Cruz's motion to amend on two grounds: (1) futility, and that (2) Cruz has not exhausted the fourth claim. (*See* Resps.' Opp. at 2, 5 n.5.) The Court agrees that it would be futile for Cruz to file a petition regarding his first three claims but cannot determine on this record that the fourth claim would be futile.

a) Cruz's claims that his "arrest by federal officials on May 10, 1995[ ] established primary jurisdiction over petitioner" and that his "federal sentence should commence on May 10, 1995 when [he] was arrested by ... federal officials"

Because the first two claims are intertwined, the Court proceeds to discuss them in tandem.

As set forth above, all record evidence supports the conclusion that Cruz was arrested by state, not federal, officials on May 10, 1995. *See supra* Section 2. New York therefore had primary jurisdiction over Cruz at the time of his arrest. *See Rosemond v. Menifee,* 137 F. Supp. 2d 270, 272-73 (S.D.N.Y. 2000). As Magistrate Judge Freeman correctly concluded, New York state did not relinquish its primary jurisdiction over Cruz when he later appeared in federal court pursuant to a writ of habeas corpus *ad prosequendum. See* Report & Recommendation at 14. Accordingly, Cruz's federal sentence did not begin until July 19, 2011,

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2014)

2014 WL 12648510

when he had finished serving his New York state sentence and was taken into the custody of the U.S. Marshals to "commence service of" his federal sentence. *See* 18 U.S.C. § 3585(a).

The first two claims that Cruz seeks to assert are therefore premised on a factual assertion directly contradicted by the record and on an attempt to rehash arguments rejected by the Report and Recommendation, which this Court now adopts. Having considered the "strongest arguments ... suggest[ed]" by Cruz's motion to amend and his subsequent brief, *see Grullon,* 720 F.3d at 140, the Court finds that any amendment of his petition to include his first two claims would be futile. In addition, the Court notes that Cruz raised his argument regarding the circumstances of his May 1995 arrest only after the filing of the Report and Recommendation. The timing of Cruz's motion to amend thus raises concerns that Cruz has engaged in "dilatory" litigation tactics, and counsels against granting leave to amend. *See Littlejohn,* 271 F.3d at 363. Finally, Cruz has already once amended his petition. (*See* Dkt. No. 4.) Under these circumstances, the Court concludes that granting Cruz leave to amend his petition to add his first two proposed new claims would not serve the interests of justice and that request is accordingly denied. *See Grullon,* 720 F.3d at 140.

    b) Cruz's claim that he is entitled to "[r]elief under *Kayfez*... [from] the double credit prohibition of [18] U.S.C. § 3568(b)"

**\*4** Although a defendant is entitled to receive "credit toward the service of [his federal] term of imprisonment" for certain periods of time "spent in official detention prior to the date the [federal] sentence commences," no such right to credit ordinarily exists if that time has already "been credited against another sentence." *See* 18 U.S.C. § 3585. One exception to section 3585's prohibition on "double credit," *see United States v. Wilson,* 503 U.S. 329, 337 (1992), exists when "a prisoner serving *concurrent* federal and state sentences, of which the state sentence was longer, ha[s] presentence time credited against his state sentence," *see Gomes v. Billingsley,* 2012 WL 546744, at *3 (S.D.N.Y. Feb. 21, 2012) (emphasis added) (citing *Kayfez v. Gasele,* 993 F.2d 1288 (7th Cir. 1993)).

Cruz cannot demonstrate that the *Kayfez* exception to section 3585(b)'s double-credit prohibition applies here because Cruz's federal and State sentences do not run concurrently, as the Report and Recommendation correctly concluded. It would be entirely futile for Cruz to file an amended petition asserting this claim because that claim is necessarily predicated on those two sentences running concurrently. *See Gomes,* 2012 WL 546744, at *3.

At some junctures, Cruz's brief in support of his motion to file an amended petition regarding this claim makes an additional argument, unrelated to *Kayfez*. Liberally construed, that claim is that a different double-credit exception to section 3585 applies to time he spent in state custody after May 14, 1996, during which time he had a federal detainer lodged against him. (*See* Pet'r's Reply at 7; Decl. of Adam Johnson dated Jan. 7, 2011, Ex. K (copy of May 14, 1996 detainer), Dkt. No. 9.) Some district courts in this Circuit "have recognized an exception ... for 'time spent in state custody ... if the continued state confinement was exclusively the product of such action by federal law-enforcement officials.' " *See Gomes,* 2012 WL 546744, at *2 n.1 (quoting *Rosemond,* 137 F. Supp. 2d at 274).

Cruz cannot prevail on a claim that this exception to double counting applies. Following his return to the custody of the New York City Department of Corrections on May 14, 1996, Cruz was awaiting trial in Bronx Supreme Court on the attempted murder charge for which he had been indicted on July 11, 1995, and for which he was eventually sentenced on October 6, 1997. (*See* Kitka Decl., Attach. 1-2.) Cruz's continued detention after May 14, 1996 was therefore not "exclusively the product" of the federal detainer. *See Rosemond,* 137 F. Supp. 2d at 274.

Having evaluated the "strongest arguments ... suggest[ed]" in Cruz's papers, this Court concludes that any amendment of his petition to include his third new claim would be futile. *See Grullon,* 720 F.3d at 140. In light of that conclusion, and the fact that Cruz has already once amended his petition, the Court denies leave to amend the petition to add the third proposed new claim. *See id.*

    c) Cruz's claim that he is entitled to "295 days of jail credit that [was] removed on January 22, 2013"

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2014)

2014 WL 12648510

The parties agree that pursuant to 18 U.S.C. § 3585(b)(2), the BOP originally gave Cruz credit toward his federal sentence for the period he spent in custody from July 17, 1995 through May 13, 1996 (a period of 302 days, not 295, by this Court's calculation). [4] The parties also agree that the BOP eliminated that credit from Cruz's federal sentence in January 2013, on the ground that the New York Department of Corrections had already applied credit for that period to Cruz's service of a "parole violator sentence." (*See* Kitka Decl. ¶¶ 20-21 & Attach. 14.) Cruz's parole violation term ran from July 17, 1995 to December 4, 1996. (*See id.,* Attach. 14.)

[4] Cruz spent about the first two-and-one-half months in state custody, and from October 4, 1995 through May 13, 1996 in federal custody. (*See* Kitka Decl., Attach. 14.)

**\*5** Cruz's fourth claim is essentially that because the parole violation term "was only eight ... months," but he actually served more than sixteen months, it would have been "impossible" for the New York Department of Corrections to have given Cruz credit toward his parole violator sentence for the longer, 302-day period in question. (*See* Pet.'s Reply at 9.) Although Cruz may mischaracterize his parole term as having a maximum length of eight months, the Court cannot conclude on this record that Cruz's claim that he has been denied credit toward his federal sentence for some portion of the 302-day period in question is entirely without merit.

The only explanation before this Court of how the New York Department of Corrections calculated Cruz's parole violation term and applied credits for the relevant time periods is part of an attachment to a declaration by a BOP Management Analyst. The declaration itself states that in January 2013, the BOP discovered that "Petitioner had served an 8-month parole violator term for New York State that was credited by the state." (Kitka Decl. 120.) The declarant goes on to state that the parole revocation term was to be "at leas[t] eight months," *see id.,* Attach. 14, but Respondents have offered no explanation of the maximum length of the parole violation term. The record contains no copies of judgments by any New York court, nor any documents from the Parole Board regarding Cruz's parole revocation. Given that lack of evidence, and the inconsistency in the record regarding the length of Cruz's parole revocation term (*compare* Kitka Decl. ¶ 20 ("8-month ... term"), *with id.,* Attach. 14 (describing a "parole violator term from July 17, 1995 [ ] through December 4, 1996*")),* the Court cannot determine how, if at all, the New York Department of Corrections gave Cruz credit for the 302 days in question. In other words, without knowing how long Cruz's parole revocation term was supposed to be, the Court is hard-pressed to determine whether 302 days of credit were in fact applied to that term.

Additional evidence in the record raises further questions regarding how, if at all, the New York Department of Corrections allocated credit for Cruz's time in both state and federal custody prior to commencement of Cruz's state attempted murder sentence on November 28, 1997. A BOP memorandum summarizing Cruz's history of detention in New York from 1995 to 2011 states that Cruz "receive[d] jail credit" for time in custody from May 14, 1996 through November 27, 1997, but makes no mention of credit for time in jail or federal custody between July 17, 1995 through May 13, 1996. (*See* Kitka Decl., Attach. 2.) The absence from that memorandum of any discussion of the 302-day period in question makes it at least plausible that Cruz could state a claim that the New York Department of Corrections in fact gave him no credit for that period.

In short, based on the record before the Court, it is not inconceivable that there is at least some period of time between July 17, 1995 and May 13, 1996 that Cruz spent in "official detention" for which neither the New York Department of Corrections nor the BOP gave Cruz credit. *See* 18 U.S.C. § 3585(b). [5]

[5] To receive credit toward his federal sentence for some portion of this 302-day period of detention, Cruz would also have to demonstrate that his continued detention was either "(1) as a result of the offense for which [his federal] sentence was imposed; or (2) as a result of any other charge for which [he] was arrested after the commission of the offense for which [his federal] sentence was imposed." *See* 18 U.S.C. § 3585(b). To date, respondents have not contested that either of those provisions of § 3585(b) applies.

Cruz v. Bureau of Prisons, Not Reported in Fed. Supp. (2014)

2014 WL 12648510

**\*6** One issue remains. Respondents argue, and Cruz does not dispute, that this 302-day claim is unexhausted. However, as respondents concede, "[t]he exhaustion requirement for § 2241 petitions ... is prudential, not statutory, and may be excused at the court's discretion." *See* Resps.' Opp. at 5 n.5 (quoting *Lopez v. Terrell,* 697 F. Supp. 2d 549, 557 (S.D.N.Y. 2010), *rev'd on other grounds,* 654 F.3d 176 (2d Cir. 2011)); *see also Pimentel v. Gonzales,* 367 F. Supp. 2d 365, 371 (E.D.N.Y. 2005); *Arango Marquez v. INS,* 346 F.3d 892, 897 (9th Cir. 2003). One ground for excusing failure to exhaust is when an "administrative appeal would be futile." *See Lopez,* 697 F. Supp. 2d at 556. Here, in response to Cruz's motion to amend, the BOP reviewed anew Cruz's eligibility for credit toward his federal sentence for the period in question and determined again that he would not receive credit. (*See* Kitka Decl. ¶ 20 & Attach. 14.) The Court concludes that it would be futile for Cruz to pursue an administrative appeal when in the context of this action, the BOP has already carried out a review of its decision to remove the 302 days of credit. The Court in its discretion therefore excuses section 2241's exhaustion requirement with regard to the 302-day claim.

Because "a liberal reading of" Cruz's fourth proposed amendment reveals some "indication that a valid claim might be stated," the Court grants Cruz leave to amend his petition, solely with regard to the new claim that pursuant to 18 U.S.C. § 3585, the BOP incorrectly denied Cruz credit toward his federal sentence for some portion of time spent in official detention between July 17, 1995 and May 13, 1996. *See Grullon,* 720 F.3d at 139.

### 4. Conclusion

For the foregoing reasons, the Court: (1) adopts in full Magistrate Judge Freeman's Report and Recommendation (Dkt. No. 17); (2) denies Cruz's request for an evidentiary hearing (Dkt. No. 28); (3) denies all claims raised in Cruz's 2010 amended petition (Dkt. No. 4); and (4) denies in part and grants in part Cruz's motion to amend his petition (Dkt. No. 19). Cruz's 2010 amended petition is hereby deemed to be amended to include only his claim that the BOP erroneously removed credit toward his federal sentence for time spent in the custody of the New York Department of Corrections between July 17, 1995 and May 13, 1996. The motion to amend (Dkt. No. 19) is otherwise denied. Cruz's 2013 petition, construed as a motion to amend, is dismissed as moot. (*Cruz v. Hollingsworth,* 14-cv-1328, Dkt. No. 1.)

On or before April 24, 2014, respondents shall answer Cruz's petition as amended above. The answer shall include evidence beyond that currently in the record regarding how, if at all, the New York Department of Corrections gave Cruz credit toward any of his New York state sentences for the period in question. The answer shall also explain more clearly the details underlying Cruz's various New York state sentences, including the minimum and maximum terms, the dates served, and how any time was credited to those sentences.

On or before May 27, 2014, Cruz may file and serve a reply to respondents' answer.

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2014 WL 12648510

---

**End of Document** <span style="float:right">© 2024 Thomson Reuters. No claim to original U.S. Government Works.</span>